HELEN S. JONES *et al.*, *by their next friend, D. C. Nellis*,
          v. JOSEPH E. WARNICK.

<div style="float:right">49   63<br>d64 148<br>64 333</div>

ATTACHMENT—*Service by Publication—Affidavit.*  In an action against
non-residents, in which an order of attachment is issued at the time
of the filing of the petition, and their real estate is attached, an affi-
davit for service by publication must be filed, and the first publica-
tion made within 60 days from the date of the filing of the petition
and other necessary papers.  If affidavit for constructive service and
the first publication thereof is not made for more than 13 months
after the filing of the petition, and the issue, levy and return of the
order of attachment, an action has not been commenced, and an or-
der of attachment cannot be issued and served.

*Error from Shawnee District Court.*

THE material facts are stated in the opinion herein, filed
June 11, 1892.

*A. L. Allen, D. C. Nellis,* and *David Overmyer,* for plaintiffs
in error:

1. The proceedings in attachment were void.  The affidavit
alleging non-residence of defendants was sworn to 16 days
before the petition was filed, and was filed one day before the
petition.  This was not a sufficient statement of facts upon
which to base an attachment.  It might have been true when
sworn to, and false when the petition was filed. 1 Wade, At-
tach., § 3; *Adams v. Lockwood,* 30 Kas. 374.  At the time the
affidavit was filed there was no cause pending.  A civil ac-
tion is commenced only by filing a petition.  Gen. Stat. of
1889, ¶ 4136.  The plaintiff can only have an attachment
"at or after the commencement" of the action.  Gen. Stat. of
1889, ¶ 4273.

2. The first decree was never vacated and set aside.  If
the court had jurisdiction to render the first decree, its power
was then exhausted until that decree was vacated.  "The en-
try of a second decree will not vacate the first."  Freem., Void
Judg., § 140*a*; *Nicholls v. Irwin,* 2 Neb. 60.

3. No legal service was ever made upon defendants, and

consequently the court had no jurisdiction. The affidavit of F. H. Denman, that affidavit for publication was made at the time the petition was filed, is wholly insufficient to cure this jurisdictional defect. If this affidavit was sufficient upon other grounds, it does not state that the affidavit for publication was ever filed. The affidavit is the foundation upon which jurisdiction is obtained. *Shields v. Miller*, 9 Kas. 266. The record must show a legal service. *Repine v. McPherson*, 2 Kas. 334. If the first service by publication was void, the second was equally so. The petition was filed July 16, 1878. More than a year afterwards, August 17, 1879, the second affidavit for publication was sworn to and filed. We submit that there was no authority to make service so long after filing the petition. The first attempt to commence the action should have been followed by first publication within 60 days. Gen. Stat. of 1889, ¶ 4097.

The action was commenced when the petition was filed. It is true ¶ 4097 has application to the statute of limitations, (*Dunlap v. McFarland*, 25 Kas. 341), but it also declares a positive rule of law and practice. It speaks in plain and concise language. It declares within what time publication must be made. It is a mandatory statute. *Comm'rs v. Carter*, 2 Kas. 109.

An attachment will not run against the estate of a decedent, an administrator or executor, or against the heirs of a decedent, to recover a debt due from the decedent. Such a proceeding is in conflict with the policy of the law. Such estates go to the heirs charged with the payment of the decedent's debts, and the law requires that these debts shall be allowed by certain rules, that require certain priorities or equalities in payment, according to the class of debts. *Patterson v. McLaughlin*, 1 Cranch C. C. 252; *Peacock v. Wilder*, 8 N. J. Law, 179; 2 Dallas, 74; *Winchell v. Allen*, 1 Conn. 385; 13 Martin (La.), 380; 1 id. 202; *Bryant v. Fussel*, 11 R. I. 286; *Murray v. Walworth*, 1 Johns. Cas. 372.

Jurisdiction has been conferred upon probate courts alone to sell real estate of decedents to pay debts. Gen. Stat. of

1889, ¶¶ 2898, 2899, 2900, 2901. It is made the duty of the probate court to grant letters of administration upon the decease of any person leaving an estate in this state. Gen. Stat. of 1889, ¶ 2785. Creditors of an intestate are provided with express powers to reach the property of their decedents. They may apply to the probate courts for letters of administration. Gen. Stat. of 1889, ¶ 2796. A creditor cannot, at his option, transfer the settlement of an estate from probate to courts of chancery. *McDonald v. Aten*, 1 Ohio, 293; 1 Pom. Eq. Jur., § 77. We are not precluded by time. A void judgment may be vacated at any time. If the judgment was void, this disposes of the statute of limitations. Gen. Stat. of 1889, ¶ 4676. The defendant can only defend on the title on which he could prosecute, and plaintiff should recover if he shows paramount title. *A. T. & S. F. Rld. Co. v. Pracht*, 30 Kas. 66. Where the court had no jurisdiction, its judgment can be attacked collaterally. *Paine v. Spratley*, 5 Kas. 525. The record in this case does not show jurisdictional facts. Wade, Attach., §§ 47, 275; *Repine v. McPherson*, 2 Kas. 334; *Wheatley v. Tutt*, 4 id. 195. Every fact which the law declares shall exist before a court can lawfully hear and determine a cause is necessarily a jurisdictional fact—an element of jurisdiction in the particular case. *Stewart v. Anderson*, 70 Tex. 588; Waples, Attach., pp. 586, 587; Waples, Pr. Rem., §§ 587, 592.

*Charles Curtis*, for defendant in error; *Morton & Clark*, of counsel:

It is evident that the plaintiffs rely entirely in this case upon their collateral attack upon the Osage county judgment. We may remark here, that the notice by publication and proof thereof, the appointment of guardian *ad litem*, his answer, and the first judgment, first sale and confirmation, and another judgment, seem to be mere surplusage, for want of a previous affidavit for publication. The order of time in which the proper proceedings were had, to give jurisdiction

to the court, seems from the record to be as follows: Petition filed July 16, 1878. Affidavit for attachment filed same day. Affidavit for publication filed August 18, 1879. Publication and proof thereof filed October 24, 1879. Service approved October 24, 1879.

The judgment, which we rely upon as effective and valid, and as furnishing a perfect basis for the execution on which the land was sold by the sheriff of Shawnee county, was rendered October 24, 1879, as above stated. The affidavit for the attachment, as stated above, was filed on the 16th day of July, 1878 — the same day on which the petition was filed. The next day a writ of attachment was issued to the sheriff of Shawnee county. On the 16th an order of attachment was issued to the sheriff of Osage county. Defendants owned land in each county.

It is true that the affidavit was sworn to 10 days before. The contention of plaintiff in error is, that the attachment is void because it was not sworn to at the time the petition was filed. Now, we submit that while it is proper for affidavit for attachment to be made as near the time of filing petition as practicable, it is the general practice to issue on affidavits made some time before. *Creagh v. Delane*, 1 Nott & McC., 189; Drake, Attach., 3d ed., § 111; *O'Neil v. Mining Co.*, 3 Nev. 142; *Graham v. Bradbury*, 7 Mo. 281; *Pickhard v. Antony*, 27 Hun, 269.

But we may dispose of this contention, perhaps, by calling attention to the fact that the alleged defect was remedied by the subsequent affidavit of the plaintiff below, and certified by the clerk to have been filed in July or August, 1879 (but not indorsed as filed on original). The charge in the original affidavit (the one alleged as defective) was that defendants were non-residents of the State. This affidavit shows that they were non-residents at the time of the commencement of the action.

There can be no question that an affidavit for an attachment, when defective, may be amended. *Swearingen v. How-*

*ser,* 37 Kas. 126; *Cassidy v. Fleak,* 20 id. 54; *Tracy v. Gunn,* 29 id. 508; *Wells v. Danford,* 28 id. 487; *Robinson v. Burton,* 5 id. 293.

But we think there is no need of paying further attention to this objection, after calling attention to the fact that the plaintiffs in error admit, in the agreed statement of the facts, that all the defendants have been non-residents of the state of Kansas since the 1st of January, 1877. We do not know how an immaterial error could be more completely rectified. *Nolan v. Royston,* 36 Ark. 561; *Frere v. Perrot,* 25 La. An. 500; *Rogers v. Cooper,* 33 Ark. 406.

That there was no case pending when the final judgment was rendered; that "the sheriff had let go of his attachment by selling the land;" that "if there was any jurisdiction at all, it was only over the land in Osage county;" that "the previous judgments were not set aside," may be disposed of briefly.

The first judgments were mere surplusage, and nothing but blank paper, for want of valid service. The lapse of time between the filing of the application, the issuance of the writ, and the filing of the petition and the filing of the affidavit for publication, did not take the case out of court. We assert, without fear of dispute, that an action may remain on the docket for years after the filing of the petition, without even an attempt to obtain service, without any detriment, except the danger of running against the statute of limitations. Our statute, requiring service within 60 days, only applies to the commencement of the action within the meaning of the article in reference to the statute of limitations. It would be a waste of words to amplify on this. That the sheriff had "let go" of his attachment by the first sale, may be answered by asking whether he would have exhausted his power by an unauthorized sale before any attempt had been made to obtain a judgment.

If the court had jurisdiction over the land in Osage county, § 3721, C. L. 1879, gave full power to issue attachment to Shawnee, and we are unable to see how the counsel for de-

fendants can claim that "this statute cannot give jurisdiction over property in another county than the one in which the action was brought, unless there has been personal jurisdiction over the person of defendant or a co-defendant." We respectfully submit that some of the conclusions of the learned counsel are quite cool, as compared with some of their tropical premises.

We have shown that the proceedings were such, in the district court of Osage county, as to give that court full jurisdiction of the case. It must be admitted that the affidavit for the attachment was amply sufficient, unless we may find cause for alarm in the fact that it was sworn to a few days before filing. But this was cured by the amendment in the affidavit, showing that defendants were non-residents at the time of the commencement of the action, and supplemented by the admission in the agreed statement of facts, on which the case was tried.

The affidavit for publication is exquisitely perfect, as is also the notice by publication. That court, then, having this full jurisdiction of the case, as an action *in rem*, we submit that the district court of no other county had a right to sustain even a direct attack upon its judgment, much less a collateral attack, such as the district court of Shawnee county properly refused to entertain. *Meixell v. Kirkpatrick*, 28 Kas. 315; *Galbreath v. Drought*, 29 id. 711.

Opinion by SIMPSON, C.: This case was tried in the district court of Shawnee county on an agreed statement of facts, which shows that the real estate in controversy, situate in Shawnee county, was owned by one Helen M. Jones. She died intestate April 5, 1875, leaving as her sole heirs her husband, Thomas W. Jones, and two children, Helen M. Jones and Susan D. Jones, who were, at the commencement of this action, minors. She owned also land in Osage county. Affidavit for attachment was duly filed in the district court of Osage county, on the 16th day of July, 1878, in an action brought by F. E. Denman, administrator of the estate of H.

B. Denman, deceased, against the said Thomas W. Jones and the said minor heirs of Helen M. Jones, on a note executed by said Thomas W. Jones and Helen M. Jones, during the lifetime of said Helen. The affidavit for attachment is as follows:

"STATE OF KANSAS, OSAGE COUNTY.

"F. H. Denman, being first sworn in due form of law, on his oath says that he is the plaintiff above named, and is the duly qualified and acting administrator of the estate of H. B. Denman, deceased; that on the 11th day of July, 1873, the defendant, Thomas W. Jones, and his wife, Helen M. Jones (since deceased), executed their note to H. B. Denman (since deceased) for $500, with interest thereon, payable annually, at 12 per cent. per annum, and also for attorney's fee if suit be instituted on said note; that Helen M. Jones since that time died, leaving the defendants surviving her as her heirs at law; that she died seized in fee of certain lands in the state of Kansas; that there has been no administrator on her estate in the state of Kansas, and no guardian appointed in said state for said minor heirs, Helen Maria and Susan Denman Jones, and that defendants are indebted to plaintiff on said note in the sum of $940.34; that said claim is just, due, and wholly unpaid. And affiant believes he ought to recover the sum of $940.34 on said note. Affiant says further, that all of said defendants are non-residents of the state of Kansas.

FRED. H. DENMAN.

"Sworn to and subscribed before me, this 1st day of July, 1878.    [SEAL.]    W. D. C. SMITH, Notary Public."

The affidavit for publication was filed on the 18th day of August, 1879. Proper service by publication and proof thereof was made. On the 24th day of October, 1879 — 21 days after the answer was due by the terms of the publication — the adult defendant, Thomas W. Jones, having failed to answer, the court, on motion of the plaintiff, appointed James Rogers as guardian of the minor children (defendants). He filed the usual answer — general denial. On the 24th day of October, 1879, the case was called for trial. The court found that due service by publication had been made, and that proof thereof had been made and duly approved, tried the case, rendered judgment for plaintiff, and practically ordered

the attached land to be sold for the payment of the judgment and costs, and that all the defendants be barred and foreclosed. An order of sale was duly issued to the sheriff of Shawnee county, appraisement duly made, sale made to J. L. Beverly, return of sheriff made, sale confirmed, deed to purchaser made by the sheriff, and by proper conveyances the title went from the purchaser at sheriff's sale to Warnick, the defendant below. The note on which the Osage county case was brought was executed by Thos. W. Jones and Helen S. Jones, the father and mother of the minor children, on the 11th day of July, 1873, and was made in Kansas. Between that time and 1877, the father and children removed from the state, and in 1888 Thos. W. Jones, the surviving husband, conveyed his interest to Nellis, one of the plaintiffs. Warnick, defendant below, is in possession. The sheriff's deed to Beverly was executed January 22, 1880, and recorded February 2, 1880.

It will be seen from the above statement of facts that the petition was filed on the 16th day of July, 1878; that an order of attachment was issued on the same day, on an affidavit of date July 1, 1878, but that no affidavit for publication against the non-residents was filed until the 18th day of August, 1879, or for more than 13 months after the petition was filed and the order of attachment issued. Was a suit commenced at the time of the issue and service of the order of attachment? This is the first and most important question in the case. If it is answered in the negative, it disposes of the case, and no further inquiry is necessary. The code provides (¶ 4136, Gen. Stat. of 1889) that an action may be commenced by filing a petition and causing a summons to be issued thereon. In the case of *Dunlap v. McFarland,* 25 Kas. 488, it is said: "Of course an attachment cannot rightfully be issued before the action (of which it is only an incident) is commenced. The action was commenced when the petition and *præcipe* were filed, and when the summons was issued." In the reported case the petition, *præcipe* and affidavit for attachment were filed April 16, 1878. On the 17th of April,

an affidavit for publication was filed, and the first publication of summons was made on the following 19th day of April. This court held that the order of attachment did not issue before the commencement of the action, as the first publication of summons related back to the filing of the petition.

In the case of *Bannister v. Carroll*, 43 Kas. 64, it is said:

"When at the time of filing a petition an affidavit for the constructive service by publication is filed, and publication follows in due time, this is causing a summons to issue thereon just as effectual for its purpose as the other mode of service."

All the sections of the code with reference to the time at which an action is to be deemed to have been commenced are carefully considered in the case, and the conclusion is reached that the proper construction to be given ¶4136 is—

"That when a petition is filed and a summons served, or the first publication is made within 60 days, such service relates back to the time of the filing of the petition and *præcipe* and other necessary papers, and by such relation the suit is to be deemed to have been commenced at the date of their filing."

It seems from a consideration of the various sections of the code that in any event a suit cannot be said to have been commenced unless the service of a summons is made or the first publication of notice is made within 60 days from the date of the filing of the petition and other necessary papers. This being so, no action had been commenced at the time of the issue, levy and return of the order of attachment that seized the real estate in controversy in this action. This fatal defect in the record of the Osage county case, under which the defendant in error claims title, compels us to recommend a reversal of the judgment.

By the Court: It is so ordered.

All the Justices concurring.