CUNNINGHAM, GREENE, ELLIS, JJ., concurring.

---

JAMES GREEN, as T. Green Grocer Company, v. A. L. McCRACKEN.

No. 12,080.    (67 Pac. 857.)

SYLLABUS BY THE COURT.

1. PRACTICE, DISTRICT COURT—*Failure to Serve Summons within Sixty Days — Motion to Dismiss.* An action will not be dismissed on motion of a defendant simply because no service of summons of any kind has been made on him within sixty days from the filing of the petition.

2. EVIDENCE—*Promissory Note—Affixing Revenue Stamp after Execution.* The affixing of a revenue stamp to a note after its execution, with the knowledge and consent of the United States revenue collector, the failure to affix such stamp at the time the note was made having occurred through ignorance and not through fraud, makes such note competent evidence, if it was incompetent without such stamp.

3. ——— *Husband and Wife—Agency of Wife.* In an action where the husband is a party, a wife who has been made an agent

to keep and care for the money of her husband is competent to testify concerning the fact that such money was loaned, the loaning being within the scope of her agency to care for.

4. ———— *Value of Attached Goods—Inventory and Appraisement Competent.* In an action for damages caused by the wrongful attachment of a stock of goods, the inventory and appraisement made under the law by the officer levying such attachment is competent evidence of the value of such goods as against the plaintiff in the attachment action.

Error from Wyandotte court of common pleas; W. G. Holt, judge. Opinion filed February 8, 1902. Affirmed.

*McGrew, Watson & Watson*, for plaintiff in error.

*Wm. J. Fuller*, for defendant in error.

The opinion of the court was delivered by

Cunningham, J.: One C. A. Olson gave his note to his brother-in-law, A. L. McCracken, for the sum of $675, and secured the same by a chattel mortgage upon a stock of groceries owned by Olson. McCracken being in possession of these goods, the plaintiff in error Green, who was a creditor of Olson, caused an attachment to be levied thereon, claiming that the mortgage from Olson to McCracken was fraudulent and void as against his creditors. The goods were disposed of under this attachment, and McCracken brought this action against Green and the constable who levied the order for the purpose of recovering the value thereof. The case was brought in the court of common pleas of Wyandotte county on July 14, 1898. On that date summons was issued for both defendants and returned, July 21, *non est* as to Green, who was a non-resident of Kansas. On September 17 plaintiff filed his affidavit for an attachment, and the order therefor was returned October 15 without

return being indorsed thereon. On November 15 an alias order of attachment was issued, which was returned, November 25, "no property found." On November 26 the plaintiff filed his affidavit for garnishment summons, which was issued to several persons named as garnishees in the affidavit. These persons subsequently made answers, disclosing that some of them owed the defendant Green, and on December 22 the plaintiff filed his affidavit for publication service as against this defendant on the ground of non-residence. After the issuance and service of the garnishment summons, to wit, on December 2, Green filed his motion, appearing specially for the purpose of the motion only, to dismiss the action as to him for the reason that the court had no jurisdiction of him, because more than sixty days had elapsed since the filing of the petition and no service of summons of any kind or character had been made upon him. This motion was overruled by the court. Issues were made up and trial had, resulting in a judgment for plaintiff against Green only, the constable having been dismissed from the case before trial.

Various errors are alleged as ground for reversal. These will be considered in the order in which they are presented in the briefs.

*First.* The first is that growing out of the overruling of Green's motion to dismiss, the claim being made that, inasmuch as no service was obtained upon him before the expiration of sixty days after the filing of the petition, the court was without jurisdiction to proceed further in the case.

Section 57 of the code of civil procedure (Gen. Stat. 1901, § 4487) provides :

"A civil action may be commenced in a court of record by filing in the office of the clerk of the proper

court a petition and causing a summons to be issued thereon."

This case then was properly commenced on the day of the filing of the petition. Successive but unsuccessful attempts were made thereafter to get jurisdiction of the property of the defendant. These attempts were continued until finally they were successful through garnishment proceedings, and thereafter prompt steps were taken to procure service by publication. Neither the section quoted nor any other one requires the petition to be refiled after the expiration of sixty days in cases where service has not been had during that interval. To be sure, the mere filing of the petition without being followed by the service of summons in the time specified would not stay the statute of limitations as provided in section 20 of the code (Gen. Stat. 1901, § 4448). Neither would it amount to a *lis pendens* under section 81 (Gen. Stat. 1901, § 4515). But neither of these questions arises here. The motion of the defendant was to *dismiss* the action. Plaintiff in error thinks that the case of *Jones v. Warnick*, 49 Kan. 63, 30 Pac. 115, is decisive of the question in his favor. We are unable to see the relevancy of this case to the question in hand. We see no error in the action of the trial court in overruling this motion.

*Second.* During the progress of the trial plaintiff below thought it was necessary for him to prove the indebtedness of Olson to him, and for that purpose sought to introduce the note in evidence for the security of which the chattel mortgage on the goods in question had been given. Objection was made to its introduction because it had not been stamped as required by the United States revenue law at the time it was given. It had, however, been subsequently

stamped by permission of the United States revenue collector for the district of Kansas, upon the affidavit of McCracken that the failure to stamp it at the time of its execution was through ignorance, and not for the purpose of defrauding the government. The court permitted the note to go to the jury, and we think committed no error in so doing. The defense proceeded upon the theory that this was a fraudulent transaction and so substantially admitted the execution of the note and mortgage, and it is doubtful if the introduction of the note was material; but even if it was material, and was incompetent as evidence without the revenue stamp affixed, we think that the subsequent attaching of the stamp cured this defect.

*Third.* Plaintiff below sought to introduce the testimony of his wife for the purpose of showing that he had money to loan Olson, as he claimed was the case, which defendant had introduced much evidence to disprove, and, in order to render the evidence competent by proving that she was acting as his agent, she was asked the following questions:

"Ques. You may state, Mrs. McCracken, if Mr. McCracken, your husband, about August or September, 1895, appointed and em'powered you to keep and care for as custodian of his and your money. Ans. He did.

"Q. Now, you may state to the jury, if you know, just as near as you can, the amount of money that your husband had, if any, in the month of August or September, 1895. A. Something over $700.

"Q. You may state, Mrs. McCracken, if you know the amount of money that your husband and you had which was in your possession, if any, about the months of April and May, 1898. A. Between $600 and $700.

"Q. You may state, Mrs. McCracken, what was done with any of that money between the 27th of April, 1898, and about the 15th of May, 1898. A. On the 27th of May we loaned to Mr. Olson $75.

"Q. Now, do you know any disposition that was made of any of that money in, on or about the 11th. of May, 1898 ?   A. We loaned Mr. Olson $500."

All of this evidence was objected to by the defendant below.   It is urged that its introduction was erroneous for three reasons :

1. That the wife being incompetent to speak except as the agent of her husband in matters pertaining to such agency, the agency to keep and care for money as the custodian of it was not an agency to loan ; hence, while she might testify that she had the same in her possession, she was not competent to testify concerning the manner of loaning.   It will be observed that the agency of Mrs. McCracken was to care for as well as to keep the money, and within the scope of that agency would fall the right to loan the same, or at least this right does not so clearly fall without the scope of that agency as that we may say that the trial court erred in admitting the evidence.

2. It is claimed that the creation of an agency cannot be proven by the mere declarations of the agent, and that such declarations are not competent to establish such agency.   This claim is well taken ; however, it has no application here.   Her agency was not sought to be established by the declaration of Mrs. McCracken.   It was her sworn statement in court that established it, and this is a perfectly competent method of establishing that fact.   (*Mo. Pac. Rly. Co. v. Stults*, 31 Kan. 752, 3 Pac. 522; *Paulsen v. Hall*, 39 id. 366, 18 Pac. 225 ; *W. & W. Rld. Co. v. Kuhn*, 38 id. 104, 16 Pac. 75.)

3. Plaintiff further urges that this agency could not be legally established by the evidence of Mrs. McCracken, because that necessarily carried with it the presumption that she was thus testifying concerning

communications made to her by her husband while the marriage relation existed between them, thus bringing it within the prohibition of the statute. This result does not necessarily follow. It does not certainly appear from the evidence that the marriage relation existed at the time of the creation of the agency, neither does it appear that this communication was "made by one to the other." How this agency arose does not appear. Defendants below were satisfied to rest the matter upon the testimony of the wife that she was the agent, without cross-examination as to how such agency was created.

In *Douglass, Sheriff, v. Hill*, 29 Kan. 530, where the wife had testified that the husband was her agent in a certain transaction under consideration, the court said:

"Now, whether she could testify as to what she said to her husband, or to what her husband said to her, or as to any communications between them, here was enough and competent testimony to show *prima facie* that he was acting as her agent. Therefore he was a competent witness," etc.

In the case at bar it may have been that the agency was created through the intervention of some third person for the purpose named.

4. During the progress of the trial, it became necessary to prove the value of the goods taken, and to establish this considerable evidence was introduced by both plaintiff and defendant, and for this purpose the plaintiff introduced the writ of attachment and return thereon, including the inventory and appraisement of the goods as made by the constable and the appraisers sworn by him. This is urged as error, as such appraisement was incompetent, as against defendant in the action, to prove such value. The question, perhaps, is not entirely free from doubt. We conclude,

however, that its admission was not erroneous. This conclusion springs in part from the following considerations : Green set in motion the machinery which at the time he knew would result in the taking and inventorying and appraising of this property. The constable was his agent for this purpose. It is admitted that, as against the constable, this appraisement would be competent but not conclusive evidence. (*Douglass, Sheriff, v. Hill*, 29 Kan. 527.) Both the constable and defendant below were proper parties to this action, and, had not the constable been dismissed therefrom, the action would have proceeded as against them both. They would have been equally liable for any damage which might have been done, in which case we have the singular spectacle of having an action in which both would be equally liable for the same amount, while the evidence sought to be introduced would be competent against one and not against the other, if the contention of the plaintiff in error is correct. Had the constable been sued alone in the action and judgment obtained against him, in the absence of fraud, that judgment would have been at least *prima facie* evidence against his principal, Green if he were thereafter sued by the constable. Further in this action it appears from the evidence that an in mediate representative of Green was present at th time of the levy of the attachment, and in his answ Green sets up as a partial defense to McCracken's a tion this attachment proceeding, thus affirming it an justifying under it. We conclude that there was error in the admission of this inventory and apprai ment, it being some evidence of the value of the goo attached.

5. The claim is made that the court below erred giving the third instruction to the jury. Witho

quoting or commenting upon this instruction at length, we may say that we find no error. The theory of the case on the part of both parties was fully presented by all of the instructions taken together. We may not criticize one standing alone, when it is evident that it was intended that all should be construed together.

6. Objection is made to an instruction which directed the jury that if they found for the plaintiff his measure of damages should be the sum they should find from the evidence to be the reasonable market value of the property taken from him under the writ of attachment at the time it was taken, but in no case should such verdict be more than the amount secured by the mortgage. Plaintiff in error insists that inasmuch as various accounts and due-bills were taken, and that the evidence showed that some money had been collected thereon, the jury should have been instructed to return no greater verdict than the value of the goods less the amount of money collected on the accounts. Closely speaking, this contention may be correct, but we think it was harmless error, if error at all, because the entire case clearly shows that the battle raged around the question of the right or wrong of the attachment; and more than this, it does not appear but that the jury made the necessary deductions, for if there was anything due at all from Olson to McCracken it amounted to over $700, whereas, the verdict of the jury in McCracken's favor was but for $390, and, from the evidence of the value of the goods, the jury might have found them worth the entire claim of the plaintiff.

The judgment of the court below will be affirmed.

JOHNSTON and GREENE, JJ., concurring.

ELLIS, J., dissenting from fourth paragraph of syllabus and corresponding portion of the opinion.