No. 49,014

CAROLYN J. THREADGILL, *Appellee*, v. ELIZABETH BEARD, *Appellant*.

(590 P.2d 1021)

Opinion filed February 24, 1979.

*James E. Salyer*, of Oyler & Salyer, of Lawrence, argued the cause and was on the brief for the appellant.

*Michael J. Malone*, district attorney, argued the cause and was on the brief as intervenor. No appearance by the appellee.

The opinion of the court was delivered by

MILLER, J.: This is an appeal by the defendant, Elizabeth Beard, from judgment entered in Douglas District Court, sitting as the Small Claims Court of Douglas County, finding the defendant in indirect contempt and sentencing her to serve two days in jail.

In November, 1976, Carolyn J. Threadgill, a former tenant of

the defendant, filed a petition in the small claims court seeking recovery of her initial tenant's deposit of $100 plus damages of $150 under K.S.A. 1975 Supp. 58-2550(c). Summons was served on defendant by posting it (attaching it with a thumbtack) on the door of a house at 116 Minnesota, Lawrence, Kansas. Defendant answered and counterclaimed for $180.80. Trial was held December 14, 1976; both parties appeared in person. The court entered judgment for plaintiff for $61.40 plus costs of $5. Aids in execution were served by posting on January 20 and January 31, 1977, requiring defendant to appear on January 27 and February 7, respectively. Defendant did not appear. On February 7, plaintiff signed and filed an accusation in contempt, reciting defendant's failure to appear pursuant to the aid in execution served on January 31, and stating that the judgment remains unsatisfied. A summons in indirect contempt was issued but the process server was "unable to locate defendant in time for court."

Plaintiff filed a second accusation in contempt, apparently on February 28, reciting defendant's failure to appear pursuant to the aid in execution issued on January 31, and again stating that the judgment remains unsatisfied. Summons in indirect contempt undated but apparently issued February 28, was served *personally* on the defendant on March 9. It commanded the defendant to appear in person on March 10 at 2:30 p.m. to be confronted with an accusation in indirect contempt, and it recited that the judgment of $61.40 plus costs of $5 remains unpaid and unsatisfied. The summons was returned and filed on March 11.

On March 10, defendant having failed to appear, the judge issued a bench warrant for her arrest. On March 11, the court received a check in full payment of the judgment and costs, which defendant had mailed on March 9 or 10. On March 14, the clerk of the court issued a receipt to defendant showing that the judgment was satisfied and the costs were paid. On the same date the plaintiff filed a satisfaction of judgment, and so far as the record indicates, plaintiff has not appeared further in these proceedings.

The sheriff arrested defendant on the bench warrant and brought her before the issuing judge on March 15. The judge fixed bond for defendant's further appearance at $1500, cash or surety, and apparently she was committed to the custody of the sheriff until bond could be posted later that day.

The judge then signed and filed two documents, "AFFIDAVIT SHOWING DEFENDANT TO BE IN INDIRECT CONTEMPT," and "ACCUSATION AND MOTION TO FIND DEFENDANT IN INDIRECT CONTEMPT." The affidavit was sworn to by the judge before a notary public on February 16, 1977, and both documents were stamped "FILED" on that date.

The affidavit recites "that on March 9, 1977, the above-named defendant was personally served with a summons . . . for her appearance . . . on March 10, 1977 at 2:30 P.M. That said defendant failed to make her appearance as ordered by this Court. That because of the foregoing, the defendant is in indirect contempt of this Court." The accusation and motion commences "COMES NOW, the State of Kansas by and through the Associate District Court Judge, John Mike Elwell, and moves to find that the defendant above-named is in indirect contempt of this Court for her failure to comply with the . . . orders of this Court" (reciting the history of events).

Trial was held on March 23. Plaintiff did not appear; defendant appeared in person and by counsel. The judge called the deputy sheriff who had served all process in the case as his only witness. The judge conducted the direct examination of that witness, and he cross-examined defendant.

The deputy sheriff testified that he had attempted to serve papers on Mrs. Beard 75 to 100 times; that she lived out in the country on Route 1; that he has seen her cars at 116 Minnesota, but no one has ever answered the door there; that he served the papers at 116 Minnesota by posting them on the door, meaning that he attached the document to the door with a thumbtack; that unless he catches Mrs. Beard out on the road in one of her vehicles, he usually has no direct contact with her; and that at the time he served defendant with the summons in indirect contempt on March 9, she said she was going to get it taken care of, and the deputy told her to "pay it directly to the Court, then there won't be any argument from the [other party] whether it was paid or not paid. It should be paid directly to the Court."

Mrs. Beard testified that her residence was on Route 1; that 116 Minnesota was a rental property, but she retained possession of the garage as a storage and work room, and therefore she went to the property at various times. She did not receive the aids in execution posted at 116 Minnesota on January 20 and January 31.

When the deputy served her personally on March 9, he told her to pay it to the court and not to the plaintiff, so she mailed her check to the court, either the night of the ninth or the following day. She did not read the summons which was served upon her on March 9, but thought they wanted her to pay the judgment, and she paid it. On cross-examination the judge indicated that contempt citations had been issued against the defendant in two other cases; defendant responded that she just sent the money in to the court like she did in this case. The judge stated that the dates of payment of the other judgments were not reflected in court records, but in both cases satisfaction was filed after the date for appearance.

In ruling, the judge said:

"[I]f there was an isolated incidence, we had no prior contacts, I think it would be considered in effect that the defendant had satisfied the judgment and there wasn't any point in pursuing the matter. Unfortunately, with the number of cases filed, all from the same thing, not returning people's deposits, the Deputy having seems like a great deal of difficulty finding the defendant to serve papers, at least I think that's the way his testimony can be interpreted, I would have to reach the conclusion that the defendant in this case does about everything she can to avoid process, and that the order in effect so far as the contempt citation was personally served, she can understand it in order to make a personal appearance. This she did not do. She stated her reasons for why. Nevertheless, Court's going to find that she's in indirect contempt of Court by reason of failure to make that appearance."

The court then sentenced the defendant to serve two days in the county jail. She appeals.

Mrs. Beard first contends that K.S.A. 61-1805, which governs the service of process under the Code of Civil Procedure for Limited Actions, is unconstitutional in that it denies due process and equal protection under both state and federal constitutions to defendants in such actions. K.S.A. 61-1805 provides in part that:

"Service upon an individual . . . shall be made by delivering a copy of the summons and of the petition to such individual personally *or by leaving copies thereof at such individual's usual place of residence* . . . ." (Emphasis supplied.)

K.S.A. 60-304 governs the service of all summons issued out of the district courts of this state excepting those issued in limited actions. K.S.A. 60-304 provides that service shall be made:

"Upon an individual . . . by delivering a copy of the summons and of the petition to the individual personally or by leaving copies thereof at such individual's dwelling house or usual place of abode *with some person of suitable age and discretion then residing therein* . . . ." (Emphasis supplied.)

The latter statute requires that in case of "residence" service, the summons must be left with some resident who, presumably, would alert the person upon whom service was being made. The former permits the process server to leave the papers at the residence without delivering them to anyone. Similar provisions for leaving copies at the usual place of residence, without requiring delivery to any person, were found in most if not all of our laws governing service of process on an individual prior to 1963. See G.S. 1949, 60-2507 and 61-204; G.S. 1935, 60-2507 and 61-204; R.S. 1923, 60-2507 and 61-204; G.S. 1915, §§ 6956 and 7707; G.S. 1868, ch. 80, § 64, and ch. 81, § 12; G.L. 1862, ch. 26, § 70 and ch. 121, § 13. Historically, we have recognized residence service as valid. *Atchison County v. Challiss,* 65 Kan. 179, 69 Pac. 173 (1902); *Thisler v. Little,* 86 Kan. 787, 121 Pac. 1123 (1912); *Royse v. Grage,* 141 Kan. 702, 42 P.2d 942 (1935); *Dean v. Metcalf,* 144 Kan. 174, 58 P.2d 1073 (1936); *Labette County Comm'rs v. Abbey,* 151 Kan. 710, 100 P.2d 720 (1940); *Sedgwick County Comm'rs v. Ellis,* 161 Kan. 631, 170 P.2d 145 (1946).

Defendant filed her answer and appeared for trial of the action on the merits. By those acts she waived any deficiency in the service of the original summons. The next two documents served were the aids in execution which were posted on the door at 116 Minnesota on January 20 and January 31. Defendant's failure to respond to those orders formed the basis for the accusation in contempt filed February 28 and the summons issued on that date. Because service on January 20 and January 31 was attempted under the provisions of K.S.A. 61-1805, and because of the domino effect of defendant's failure to respond pursuant to that service, we conclude that defendant has standing to challenge the constitutionality of that statute.

Service on January 20 and January 31 was not proper under K.S.A. 61-1805 for the obvious reason that 116 Minnesota was not the defendant's residence; the deputy sheriff knew that her residence was on Route 1. Leaving a copy of a document at a place other than the defendant's actual residence is not valid service under a statute requiring that the document be left at the defendant's "usual place of residence." See *Stumfoll v. Inman,* 188 Kan. 553, 363 P.2d 443 (1961) and cases therein cited. On the record before us, defendant had no actual notice and there was no valid

service upon her of any post-judgment proceedings prior to March 9 when the summons for indirect contempt was served.

In attacking K.S.A. 61-1805 on constitutional grounds, defendant relies heavily on *Gilbert v. Mathews,* 186 Kan. 672, 352 P.2d 58 (1960), where we said:

"Where a statute specifies a method of notifying a defendant that he has been sued in court, the method of transmitting the notice to defendant must be one that is reasonably calculated to give the defendant actual notice of the pending action and an opportunity to be heard in defense. (72 C.J.S., Process, § 51, p. 1065.)

"Service on a defendant of the character selected and attempted by the statute involved in this case should contain the requirement that makes it reasonably probable that the defendant will receive actual notice. Anything less than this is not due process. (*Wuchter v. Pizzutti,* 276 U.S. 13, 72 L.Ed. 446, 48 S.Ct. 259, 57 A.L.R. 1230.)" (p. 684.)

Leaving a summons or other document at a residence in a position where it would ordinarily come to the attention of the resident is certainly a method of service calculated to give notice. A document tacked or stapled to the principal entrance door would ordinarily attract attention and serve the desired purpose. In those rare instances where such a notice is not actually found or received by the person intended to be served, the trial courts are not powerless to set aside any judgment entered if application therefor is made promptly upon receipt of actual notice. We have confidence that our trial courts will see that the ends of justice are properly served in such instances. We hold that the statute does not violate the due process requirements of either federal or state constitutional mandates.

For her equal protection argument, defendant contends that the distinction between persons involved in limited actions and regular civil actions is not a valid classification; that defendants in both types of actions have been sued in the district court, and both are entitled to the same type of service. We do not agree. Limited actions do not present the prospect of the dire consequences possible through the regular civil action. We hold that the legislature is fully justified in prescribing different procedure for limited actions, including the difference in the requirements for service of process.

Summarizing, we hold that the attempted service on January 20 and January 31, 1977, was void since it was not in conformity with K.S.A. 61-1805; but we hold the statute constitutional.

We next turn to defendant's contention that the trial court

abused its discretion by sentencing her to jail for indirect contempt for the reason that the contempt was civil in nature, and defendant had purged herself of any contempt by satisfying plaintiff's judgment prior to the time the court committed her to jail.

The statute under which these contempt proceedings were initiated is K.S.A. 61-2204. It is a part of article 22, entitled **Executions and Orders of Sale.** K.S.A. 61-2204 (amended in 1978 in parts not here involved, and now appearing as K.S.A. 1978 Supp. 61-2204) provides that when an execution is returned unsatisfied or when the judgment creditor is without sufficient knowledge of the debtor's assets to advise the officer where and on what to levy execution, the court shall have power to order the debtor to appear and answer concerning his or her property. This is the statutory authorization for the orders in aid of execution which were entered by the trial court in this case.

K.S.A. 61-2204 then reads as follows:

"If any person fails, neglects or refuses to so appear and answer concerning his or her property at the time and place specified in such order, or, if any person so subpoenaed as a witness in said proceeding shall fail, neglect or refuse to appear or to testify concerning anything about which such witness can lawfully be interrogated, such witness shall be guilty of contempt of court; and the court or judge shall issue a citation requiring such witness, at an early day therein to be appointed, to appear before the court and show cause, if any, why such witness should not be punished for contempt.

"If, after proper service of citation by any officer or other person, such person shall not on the day appointed appear before the court, . . . the court may issue an attachment or bench warrant commanding the officer to whom it is directed to bring such person before the court to answer for contempt. If the court shall determine that any such person is guilty of contempt the court may punish such person by a fine of not more than fifty dollars ($50) or by imprisonment in the county jail for a period of not to exceed thirty (30) days or by both such fine and imprisonment."

This statute is civil and remedial. Its purpose is to provide a simple and effective method by which a person who has recovered judgment in a limited action may discover the assets of a recalcitrant judgment debtor and thus find property or funds which may be levied against in order to satisfy the judgment. That portion of the statute set forth above does not purport to set up a new and separate procedure for the trial of contempt matters; it is expressly designed for a remedial purpose: to assist a judgment creditor to secure satisfaction of the judgment. We view the

penalties provided therein as maximum penalties which the court may invoke in order to secure compliance with the court's orders to appear and make disclosure. The purpose of the statute was accomplished in the case at hand when the defendant paid the judgment and costs in full. Pending proceedings thereunder should have been abated.

We have not overlooked the intervenor's contention that the proceeding was one in indirect criminal contempt for "a blatant affront to the dignity of the court," for which punitive measures were appropriate. The record, however, does not support a finding of any *intent* on the part of the defendant to flagrantly violate or disregard the court's orders and authority. The defendant had no actual notice and no lawful residence service of notice that any proceedings to enforce the judgment were pending until March 9, 1977.

The fact that Mrs. Beard had been sued seven times previously in the small claims; that judgment had gone against her each time; that she had appealed from several of the judgments and had lost the appeals; and that she had not satisfied two of the prior judgments until contempt citations were issued, all as set forth in detail in the trial court's order entered in this contempt proceeding, does not necessarily indicate a contemptuous attitude on the part of the defendant. Likewise, the fact that the process server had difficulty serving Mrs. Beard does not indicate contempt for the court on her part. The deputy was admittedly attempting to serve the defendant on many occasions at places other than at her usual place of residence. Further, we know of no law which requires a potential recipient of a summons or other process to cooperate with and accommodate a process server. Service cannot be obstructed (K.S.A. 21-3808) but no obstruction is claimed. The fact that all eight lawsuits arose out of disputes over deposits made by tenants is not indicative of a contemptuous attitude toward the court. Indeed, if the defendant failed to comply with the Residential Landlord and Tenant Act, K.S.A. 58-2540 *et seq.,* the court could have granted the various plaintiffs damages in the amount of up to one and one-half times the sum wrongfully withheld. K.S.A. 58-2550(*c*) (since amended). Apparently no finding of noncompliance and no award of damages was made in the case at hand.

The facts bearing on contempt are these: defendant was per-

sonally served with summons, directing her to appear in person; the summons recited the amount of the unpaid judgment and costs; the deputy sheriff who served the summons told defendant to pay the amount due into court; defendant thought that the court wanted her to pay the judgment, and she did so immediately; and she did not appear at the time specified in the summons.

Intent is sometimes held to be a necessary element in criminal contempt. 17 Am.Jur.2d, Contempt § 8; 17 C.J.S., Contempt § 8c. Whether it be considered an element or not, intent is important in determining the gravity of the occurrence. Failure to obey an order of court to appear may be intentional and willful; it may be wholly unintentional, as where the person summoned sustains disabling injury or illness preventing compliance; or it may be excusable, where for any number of reasons the person misunderstands the order, believes the order is no longer in effect, or is misled by the terms of the order itself or by court personnel, persons serving the order or others. Whether a particular act or omission is contemptuous depends not only upon the nature of the act itself, but upon intent, good faith, and the surrounding circumstances.

Upon the record before us we conclude that no criminal contempt is shown.

The judgment is reversed, with directions to discharge the defendant.