(997 P.2d 745)

No. 80,774

VINCENT P. CONNERY, *Appellee*, v. JONES STORAGE & MOVING, INC., *Appellant*.

Opinion filed February 18, 2000.

*F. C. "Rick" Davis II* and *Kenneth H. Jack*, of Davis & Jack, L.L.C., of Wichita, for appellant.

*J. Joseph Weber*, of Reals & Weber, of Wichita, for appellee.

Before GERNON, P.J., C. FRED LORENTZ, District Judge, assigned, and PAUL E. MILLER, District Judge, assigned.

GERNON, J.: Jones Storage & Moving, Inc., (Jones) appeals the trial court's citation of indirect contempt.

Vincent P. Connery became the sole owner of a house in Wichita when his father died. Connery failed to pay the mortgage, the bank foreclosed, and the property was sold at a sheriff's auction. When Connery failed to redeem it, the bank notified him that he could either remove his personal property from the residence or it would hire a company to do so. Connery did not respond, so the bank hired Jones to remove Connery's personal property and place it in storage. The move required a crew of 10 people to work for 5 days packing and inventorying the property. Connery's property filled five 48-foot moving vans.

After storing the property for nearly 6 months without being contacted by Connery, Jones notified him that it intended to sell the property at public auction. Three days before the sale, Connery filed a petition seeking to have the sale restrained and his property returned to him. Jones counterclaimed for a judgment against Connery for the moving and storage costs and permission to sell enough of the property to satisfy its warehouseman's lien.

The trial court restrained the sale but granted Jones a judgment against Connery for the storage costs previously incurred and an ongoing judgment for each additional month that Connery's personal property remained in storage. The trial court also permitted Jones to sell any of Connery's personal property as necessary to satisfy the judgments in its favor and the incremental sale and moving costs.

Connery appealed the trial court's decision. This court affirmed and granted a lien against Connery in favor of the bank for the costs of moving the property. *Connery v. Jones Storage & Moving, Inc.*, No. 74,057, unpublished opinion filed February 14, 1997. Subsequently, Connery filed for review by the Kansas Supreme Court. Before the Supreme Court denied Connery's request for review, Jones notified Connery of its intention to terminate storage.

Jones' notice required Connery to pay $62,383.30 in storage costs and remove his property or Jones would sell all of Connery's personal property by public auction.

Jones sold Connery's property at public auction, realizing $158,861 in gross proceeds. Thereafter, Connery filed a motion and affidavit seeking to have Jones found in contempt of court. Following a hearing, the trial court found Jones in contempt and awarded Connery a judgment of $18,920.82 and ordered Jones to pay a fine of $20,000, to include Connery's legal fees for prosecuting the contempt. Jones appeals the trial court's finding of contempt.

Jones argues that it was not in contempt because it properly terminated the storage pursuant to K.S.A. 84-7-206 rather than attempting to foreclose its warehouseman's lien pursuant to K.S.A. 84-7-210. K.S.A. 84-7-206(1) provides:

> "A warehouseman may on notifying the person on whose account the goods are held and any other person known to claim an interest in the goods require payment of any charges and removal of the goods from the warehouse at the termination of the period of storage fixed by the document, or, if no period is fixed, within a stated period not less than thirty days after the notification. If the goods are not removed before the date specified in the notification, the warehouseman may sell them in accordance with the provisions of the section on enforcement of a warehouseman's lien (section 84-7-210)."

The 1996 Comment to K.S.A. 84-7-206 notes that the section provides a procedure to allow a warehouseman to terminate storage at any time when there was no fixed storage period, limited only by the requirement of providing 30 days' notice. The comment also notes a Maryland case which refused to apply U.C.C. § 7-206 when a warehouseman had already elected to foreclose his lien under U.C.C. § 7-210. See *Hellmann v. Smith-Mayflower*, 47 Md. App. 335, 424 A.2d 378 (1980).

Relying on *Hellmann*, Connery argues that Jones is precluded from using K.S.A. 84-7-206 to avoid the court's contempt citation because it elected to foreclose its lien pursuant to K.S.A. 84-7-210 when it filed a counterclaim seeking relief under that section.

Kansas courts have not interpreted K.S.A. 84-7-206. The interpretation of a statute is subject to de novo review. *Hamilton v.*

*State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998). The fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. The legislature is presumed to have expressed its intentions by the language of the statute. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. The courts are not allowed to speculate as to the legislative intent and cannot read a statute so as to add something not readily found in the statute. *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 (1998).

We agree with the Maryland court's interpretation and find K.S.A. 84-7-206 and K.S.A. 84-7-210 to be mutually exclusive, depending on the warehouseman's election. This interpretation is consistent with a policy of good faith and fair dealing which would preclude a warehouseman from pursuing a second remedy before the first attempt had been completed.

Jones sought assistance from the court in foreclosing its warehouseman's lien. While the judgment in its favor was still pending acceptance on appeal to the Kansas Supreme Court, Jones made a second attempt at securing payment for the costs incurred in storing Connery's personal property by giving Connery notice of a termination sale under K.S.A. 84-7-206. Jones refused to be patient in enforcing its judgment while Connery exercised his statutory right to appeal. We conclude that, by choosing to pursue a warehouseman's lien under K.S.A. 84-7-210, Jones was precluded from attempting a second remedy under K.S.A. 84-7-206.

The trial court's journal entry of judgment permitted Jones to sell "only so much of the personal property . . . as is necessary to satisfy [the various judgments against Connery] herein and the sale costs and expenses and the costs and expenses of moving the residue of the personal property to a place designated by [Connery], with the residue being delivered by Jones Storage & Moving, Inc. to that designated place." Jones clearly ignored the court order and sold more than necessary to satisfy its lien and sought to recover the costs associated with moving and selling the property.

The trial court did not err by finding that Jones had violated the court's order.

In the alternative, Jones argues that the trial court's citation of indirect contempt was unwarranted because Jones' actions were legally excused. Jones offers four arguments in an attempt to establish an excuse for violating the court's direct order. First, Jones argues that the trial court failed to consider its intentions and good faith in executing the sale. Second, Jones argues that the court's finding that the sale was commercially reasonable precludes the finding that it was excessive. Third, Jones argues that the trial court lacked jurisdiction to enter an order of contempt because of the form of the order. Fourth, Jones argues that its actions can be interpreted to be consistent with innocence.

For its first argument, Jones relies on *Threadgill v. Beard*, 225 Kan. 296, 590 P.2d 1021 (1979). In *Threadgill*, the trial court found a landlord in indirect contempt for failing to pay a judgment to a former tenant. The Supreme Court reversed the contempt finding because the landlord had paid the judgment into the court on the day of the hearing, even though she failed to appear at the contempt hearing. 225 Kan. at 304.

Jones points to the *Threadgill* court's statement that "[w]hether a particular act or omission is contemptuous depends not only upon the nature of the act itself, but upon intent, good faith, and the surrounding circumstances." 225 Kan. at 304. Jones argues that the trial court failed to consider its intentions and good faith in selling the property pursuant to a termination of storage. The facts of this case, however, can be distinguished from the facts in *Threadgill*.

The *Threadgill* court noted that indirect contempt has a remedial purpose, to secure compliance with court orders. 225 Kan. at 302-03. Compliance was achieved in that case when the landlord fully paid the judgment and court costs into the court, leaving no further purpose for a contempt finding. The *Threadgill* court also noted that the landlord had not exhibited an intentional disregard for the court's order because she had not been properly served with notice of a writ of execution. 225 Kan. at 303.

Conversely, in this case, Jones knew that it had the power to sell only as much of Connery's property as necessary to cover its judg-

ments against Connery and the costs associated with the sale and removal of the remaining property. Acting beyond the scope of the court's order, Jones intentionally initiated a termination sale rather than a warehouseman's lien sale and sold all of Connery's personal property. Unlike the landlord in *Threadgill*, Jones did not comply with the court's order at any time.

Jones also argues that its good faith is established by the trial court's finding that the sale was commercially reasonable. Jones relies on *Westgate State Bank v. Clark*, 231 Kan. 81, 95, 642 P.2d 961 (1982), to support the proposition that commercially reasonable is equivalent to good faith. *Westgate State Bank* does not support that proposition. *Westgate State Bank* states that the ultimate test to be applied in determining whether a sale was commercially reasonable is whether the parties acted toward each other in good faith and in a reasonable manner. 231 Kan. at 95. Jones cannot argue that it acted in good faith toward Connery when it initiated a termination sale against him before his statutory right to appeal had been concluded. Accordingly, the trial court did not erroneously overlook Jones' intent, good faith, and the surrounding circumstances when it determined that Jones had violated the court's order.

In its second argument, Jones asserts that the trial court's finding that the sale was commercially reasonable precludes a finding that the sale was excessive. Jones argues that K.S.A. 84-7-210 makes commercially reasonable sales and excessive sales mutually exclusive. K.S.A. 84-7-210 contains no such language.

Beyond the trial court finding that the sale was commercially reasonable, Jones fails to establish any authority for the proposition that a commercially reasonable sale cannot be excessive. A finding of commercial reasonableness deals with the quality of the sale. A finding that the sale was excessive deals with the quantity of the sale. These principles are not mutually exclusive.

For its third argument, Jones asserts that the trial court's failure to include any reference to its defense or extenuation in the contempt order is reversible error. This argument relies on K.S.A. 20-1203 and *In re Gambrell*, 160 Kan. 620, 164 P.2d 122 (1945). Both of these authorities refer to direct contempt citations rather than

indirect contempt citations. K.S.A. 20-1203 requires a written finding of direct contempt, including a recitation of the contemptuous conduct and a statement of the accused's defense or extenuation. K.S.A. 1998 Supp. 20-1204a, on the other hand, prescribes the procedure for an indirect contempt citation but does not require the court to make specific findings regarding the defendant's defense or extenuation. Jones' argument on this point is without merit.

Finally, Jones argues that its actions can be excused because they are capable of being interpreted consistently with innocence. Jones asserts that it properly sold property valued at $13,678.47 to pay the judgment against Connery in favor of the bank. When the auctioneer's commissions are added to the $13,678.47, Jones argues that it substantially complied with the court's orders. This argument is without merit.

Jones had no power to enforce a judgment for the bank. The bank could not claim any interest in Connery's personal property without first filing a writ of execution. See K.S.A. 1998 Supp. 60-2401. Likewise, Jones could not extend its warehouseman's lien created by K.S.A. 84-7-209 to include a judgment in favor of the Wichita Federal Savings and Loan.

In addition, the language of the court order precludes any finding that Jones could extend its lien to the judgment in favor of the bank. The journal entry permitted Jones to sell as much of Connery's personal property as necessary to cover the various judgments against Connery. The journal entry does not award any judgments against Connery and in favor of the bank. The judgment in favor of the bank resulted from this court's decision on appeal. See *Connery v. Jones Storage & Moving, Inc.*, No. 74,057, unpublished opinion filed February 14, 1997.

Jones has failed to demonstrate any legal excuse for violating the court's journal entry. Court orders and an orderly appeal process far outweigh the remedy Jones sought to craft here. While we recognize the frustration present in these facts, the procedures attempted here cannot be condoned. We conclude the trial court did not err by finding Jones in contempt and assessing the penalties herein.

Affirmed.