No. 45,276
Darlene Cadwallader, *Appellee,* v. Dale H. Lehman, *Appellant.*
(451 P. 2d 163)

Opinion filed March 8, 1969.

*Robert M. Baker,* of Ashland, argued the cause, and was on the brief for the appellant.

*Ken W. Strobel,* of Dodge City, argued the cause, and *B. G. Larson,* also of Dodge City was with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: This action was commenced by the plaintiff, Darlene Cadwallader, to recover an amount alleged to be due from the defendant, Dale H. Lehman, on a judgment for child support obtained by plaintiff in the District Court of Thurston County, Nebraska, on January 10, 1957. Default judgment was entered in this case on July 27, 1967, for the sum of $6,066.65 and interest. A motion by defendant to set the judgment aside was overruled and this appeal followed. The parties will be designated either by name or as plaintiff and defendant, respectively.

In the Nebraska action, plaintiff was awarded the custody of three minor children and the defendant was ordered to pay child support of $100 per month. In the present lawsuit it is plaintiff's position that her former spouse has defaulted in the payment of child support due under the judgment, and such is the gravamen of the instant cause of action.

Since the rendition of the Nebraska judgment both plaintiff and defendant have assumed new marital relationships. Neither party now lives in the state of Nebraska, the plaintiff presently residing in Alaska, and the defendant in California.

During the calendar year 1965 the defendant inherited from his mother a one-third interest in a 320-acre farm in Clark County, Kansas. On July 25, 1966, the defendant quitclaimed his interest in the farm to his present wife, Ileen, the deed being recorded in Clark County on August 15, 1966. The deed bears no federal revenue stamps and recites a consideration of $1.

On August 19, 1966, four days after the deed to Ileen was recorded, the present action was filed in the Clark County District Court. On the same date a summons was issued, being directed to the sheriff of Clark County. The summons was returned by the sheriff on the same day it was issued, bearing the notation "Not found in Clark County, Kansas."

Less than a month later, and on September 8, 1966, a summons for personal service outside the state of Kansas was directed to the sheriff of Los Angeles County, California. The officer's return, which is signed and acknowledged, shows personal service on the defendant in Los Angeles County on October 3, 1966. Nine days later, on October 12th, a letter was dispatched on the defendant's behalf by a Los Angeles law firm addressed to plaintiff's lawyers in Dodge City, Kansas. The letter advised Mrs. Cadwallader's counsel that Mr. Lehman had consulted their office; that he was not a Kansas resident; and suggested that the proceedings be suspended for lack of jurisdiction.

Under date of November 9, 1966, a letter from plaintiff's counsel was sent by certified mail to the defendant, and Mr. Lehman personally receipted for the same. The letter advised the defendant that the plaintiff's petition would be presented to the court on December 8, 1966; that plaintiff's attorneys were in the process of attaching his undivided one-third interest in the Clark County real estate (describing it); and that if defendant did not appear and

defend the suit, it was their intention to sell his interest in the land under execution and eventually file a partition action. Lehman was further advised that if the land was transferred, action would be taken to set the deed aside as fraudulent.

Judgment was not taken on December 8th, but an affidavit for attachment was filed on that date and an order of attachment was issued and directed to the Clark County sheriff for service. The sheriff's return showed that service was made on December 8, 1966, by levy upon and attachment of the defendant's interest in the described Kansas real estate.

A copy of the attachment order, bearing the return made by the sheriff of Clark County, was also thereafter served personally on the defendant in Los Angeles County, California, by the same officer who served the original summons. The verified return shows the date of service as January 18, 1967.

Apparently no further action was taken in this lawsuit until July 27, 1967. In the meantime, Ileen and her husband, the defendant, together with owners of the other two-thirds (⅔) interest in the real estate, contracted to sell the land to a third party for $56,000, and deeds were executed pursuant to their agreement.

When the prospective purchaser had the abstract examined, he learned the real estate had been attached, and this court was advised, at the time of oral argument, that the purchase money is being held in escrow pending final determination of the present proceedings. The defendant now contends this was the first he had known of the attachment; that he had not even known he was being sued in Kansas. This contention however is refuted by the record.

On a date not shown, but presumably after sale was made, the defendant's brother, Lawrence A. Lehman, individually and as guardian of an incompetent sister, filed a motion for leave to intervene. This motion was heard on July 27, 1967. Lawrence appeared through his counsel, Robert M. Baker, who now represents the defendant, and the defendant made no appearance either in person or by counsel. The court overruled Lawrence's motion to intervene, but proceeded to approve the service which had been had upon the defendant and awarded judgment against the defendant in the amount asked.

Following entry of judgment, the defendant, for the first time, made an appearance in this lawsuit. On August 10, 1967, he appeared specially and filed a motion to set aside the default judgment

of July 27, 1967, on two grounds: First, that he was a California resident and the court had no jurisdiction over him and second, that there was no competent evidence or reason on which a judgment, default or otherwise, could be based. On the same day, August 10, 1967, two motions were also filed by the defendant's wife, Ileen, one to intervene and the other to quash the attachment.

All three motions were heard on September 7, 1967, at which time the court overruled the defendant's motion to set aside the default judgment, sustained Ileen's motion to intervene and overruled her motion to quash the attachment. The court also overruled Ileen's oral motion to require plaintiff to furnish an indemnifying bond. At the same time the court allowed plaintiff's oral motion for leave to file a creditor's bill. A creditor's bill was filed September 12, 1967, but we are advised it has not been heard pending disposition of this appeal.

The present appeal is from the court's refusal to set aside the default judgment of July 27, 1967; from the order allowing plaintiff to file a creditor's bill; and from all other adverse rulings and orders.

We shall first turn to the defendant's claim that the Clark County District Court was without jurisdiction over him and that the judgment ostensibly rendered against him was, therefore, null and void. Here we point out that in oral argument before this court, counsel for plaintiff stated his client was not contending that her judgment was anything more than a judgment *in rem*. This acknowledgement accords in principle with the statement found in plaintiff's brief that the Kansas Court at least had authority to render judgment *quasi in rem*.

In view of the plaintiff's concession, we need consider this judgment as being only *in rem*, and shall discuss its validity in that context alone. Hence we are not called upon to decide whether plaintiff's cause of action comes within the purview of K. S. A. 60-308 (*b*) (3) as one which arises from the ownership, use or possession of real estate situated in this state. Nor would anything be gained by inquiring whether the service obtained on the defendant would suffice, under the so-called "long-arm" statute, to support a personal judgment.

The validity of the judgment against Lehman, viewed as a judgment *in rem*, depends on whether service was obtained upon him in substantial compliance with our statutes. Before pondering this issue in depth, we pause to observe we are cognizant of the suggestion which has been made that since the judgment is personal, in

form, it cannot be *in rem.* It is our opinion, however, that the language in which a judgment may be couched is not conclusive as to its classification or type, or as to the effect which must be accorded it. In discussing the question of the jurisdiction which is acquired over nonresidents through substituted or constructive service, the author of the text in 42 Am. Jur., Process, § 77, p. 66, had this to say:

". . . a judgment against a nonresident brought into court only by substituted or constructive service can be effectual only as a judgment *in rem,* acting on such property as the defendant may have within the jurisdiction. If he has no such property, there is nothing on which the courts can adjudicate. The judgment may be in form a personal one, but it has no effect beyond the property attached in the suit; . . ."

As we have already related, personal service of summons was made upon the defendant in Los Angeles County, California, on October 3, 1966. Under the provisions of K. S. A. 60-308 (*a*) (1) that service, if validly executed, would be the equivalent, so far as Lehman is concerned, of service upon him by publication. The statute reads:

"Personal service of summons may be made upon any party outside the state. If upon a person domiciled in this state or upon a person who has submitted to the jurisdiction of the courts of this state, it shall have the force and effect of personal service of summons within this state; *otherwise it shall have the force and effect of service by publication.*" (Emphasis supplied.)

But it is objected that the officer who served the summons on the defendant did not verify the return. Hence it is argued there was no valid out-of-state service. The applicable statute K. S. A. 60-308 (*a*) (2) provides:

"The service of summons shall be made in like manner as service within this state, by any officer authorized to make service of summons in the state where defendant is served. No order of court is required. *An affidavit of the server shall be filed stating the time, manner and place of service. The court may consider the affidavit, or any other competent proofs, in determining whether service has been properly made.*" (Emphasis supplied.)

Strictly speaking the return lacks verification. The deputy sheriff made out his return properly, and in affidavit form. Moreover, he signed the return at the place indicated, but the Clerk of the Superior Court, for some reason best known to himself, attached an acknowledgment instead of executing a verification. We do not regard this as fatal, however. The district court approved the service, as shown by the journal entry of July 27, 1967. In so doing, the court was authorized, by the statute itself, to consider any competent proof that service had properly been made.

In our opinion it was proper for the trial court, in determining whether the defendant was served with out-of-state summons on October 3, 1966, to take into account the return of service which, although only acknowledged, at least suggests personal service on Lehman, together with the letter of October 12, 1966, from the attorneys consulted by Lehman about the lawsuit. We conclude the court was justified in finding the defendant properly served with out-of-state process. The statute equates that service to service by publication.

It is true that no attachment had been levied on Kansas property, either when the out-of-state summons was issued, or when it was served on October 3, 1966. Neither had an affidavit for attachment then been filed, or an order of attachment issued. It was only on December 8, 1966, that an attachment affidavit was filed, an attachment order issued, and a levy made on Lehman's interest in the Clark County land. This poses the question: Is it necessary, in an action such as this, to levy an attachment on property within the state before constructive service may be obtained?

We are frank to say our limited research has located no Kansas authority squarely in point, and we have received precious little assistance in this regard from counsel. There is case law to the effect that attachment proceedings may not be undertaken prior to the filing of an action to which the attachment is ancillary (*Smith v. Payton*, 13 Kan. 362; *Jones v. Warnick*, 49 Kan. 63, 30 Pac. 115), but these cases are not relevant to the situation which confronts us. In the present action the attachment affidavit was filed and the attachment was levied after, not prior to, the commencement of the main action.

There is difference of opinion among the courts of this country over whether a valid attachment must precede or attend constructive service. In 42 Am. Jur., Process, § 74, p. 63, the conflict of authority is stated in this way:

"Prior to the decision of Pennoyer v. Neff, it was the law in many jurisdictions that, if a nonresident defendant had property in the state, its courts had jurisdiction, without seizing it, to proceed by publication of the summons, and render a judgment in personam valid within the state to the extent of any property of the defendant therein. It is now established, however, that the property of a nonresident defendant must be seized before any valid judgment can be rendered. . . . It has been held, however, that in the absence of statute it is unnecessary to levy an attachment on the property before publication; it is sufficient if such levy precedes the entry of the judgment. A contrary

view is taken by some courts, which hold that proceedings for the service of summons by publication on a nonresident before attachment of his property are null and void."

To similar effect, the text in 72 C. J. S., Process, § 73b, p. 1108, reads:

"Previous attachment of property in the state is not necessary to authorize service on a nonresident defendant out of the state unless required by statute. . . ."

The difference in viewpoints is emphasized in *Skillern v. Ward,* 79 Idaho 350, 317 P. 2d 1050, where it is said:

"There is a diversity of authority on the question as to whether or not a valid attachment must precede or accompany the substituted service, or whether the seizure of property of defendant is sufficient if it occurs any time before judgment. (Citing cases.)" (p. 355.)

As indicated in 72 C. J. S. *supra,* some states, such as New York, have enacted statutes requiring that property within the state be attached, or at least brought under court control, prior to obtaining substituted service, where a nonresident's property is sought to be appropriated to the payment of a claim. (*Soemann v. Carr,* 188 N. Y. S. 2d 611.) However, Kansas has no such statute. K. S. A. 60-701 simply provides:

"The plaintiffs at *or after the commencement of any civil action* may, as an incident to the relief sought, have one or more attachments against the property of the defendant, or that of any one or more of several defendants, when the defendant whose property is to be attached, (1) is a nonresident of the state . . ." (Emphasis supplied.)

After assidious study of the relatively few cases we have unearthed on the question, we are inclined to the view that the better and more equitable rule is that which permits attachment proceedings to be commenced after substituted service has been obtained, provided the defendant be given reasonable notice of and opportunity to defend against the attachment proceedings prior to the entry of judgment.

In *State ex rel. Bank v. Circuit Court,* 32 S. D. 573, 143 N. W. 892, the Supreme Court of South Dakota had this to say in the course of its opinion:

". . . It is the settled law of this state, in conformity with the decisions in the majority of the states, that it is not necessary for the court to acquire jurisdiction over the property prior to the granting of the order of publication. (Citing cases.)" (p. 578.)

In an earlier case, *Iowa State Savings Bank v. Jacobson,* 8 S. D. 292, 66 N. W. 453, the same court said:

". . . Upon the theory that property is always in the possession of its owner and the assumption that he will look to any legal proceedings instituted to affect the same, the publication of a summons immediately followed by the seizure of property under an attachment, in time to enable him to appear and defend before judgment, is sufficient to confer jurisdiction upon a court over the attached property of a nonappearing nonresident defendant. For the purposes of an attachment the action is deemed commenced against a nonresident defendant when the summons issues, provided publication thereof is commenced within 30 days; and the writ may then issue, or at any time afterwards, within the rule above announced. . . ." (p. 298.)

Among other cases supporting the rule, attention is invited to *Hartzell v. Vigen,* 6 N. D. 117, 69 N. W. 203, 35 L. R. A. 451, 66 Am. St. Rep. 589, where a comprehensive discussion of the subject is found. For cases contra, see *Breon v. Lumber Co.,* 83 S. C. 221, 65 S. E. 214, 24 L. R. A. (N. S.) 276, 137 Am. St. Rep. 803 and *Francis v. Allen,* 37 Ohio Ops. 362, 79 N. E. 2d 803, although the latter might well be distinguished.

Fitting the facts of this case within the content of the rule we have announced, we find that substituted service was obtained on the defendant forty-five days after the petition was filed—well within the ninety days time specified in K. S. A. 60-203 for the first publication. Judgment was not finally taken until July 27, 1967, some eight months after the defendant was advised by certified mail that his interest in the land was being attached, and six months after a copy of the attachment order, with the return showing service thereof, was personally served on the defendant in California. The defendant thus had time in abundance to appear and protect his interest. His plaintive plea that he knew nothing of the attachment proceedings has a hollow ring when his own brother, a co-owner of the land, had time to file a motion for intervention before judgment was entered, and had presented his motion through counsel on the same date default judgment was taken against the defendant. Moreover, defendant concedes in his brief that he became cognizant of the attachment when the abstract was examined in connection with the sale of the farm.

Considering the out-of-state service had personally upon the defendant, in conjunction with the attachment later levied upon the defendant's interest in the real estate, of which attachment the defendant long had notice, we are forced to conclude that the trial court was not without jurisdiction to enter default judgment against

the defendant *in rem*. We need not, of course, speculate here as to what the result might have been if the service had been attacked prior to the levy of attachment.

We believe the conclusion we have reached, as expressed in the foregoing paragraph, accords with the spirit and carries out the purpose of that portion of K. S. A. 60-204 which provides:

". . . In any method of serving process, substantial compliance therewith shall effect valid service of process if the court finds that, notwithstanding some irregularity or omission, the party served was made aware that an action or proceeding was pending in a specified court in which his person, status or property were subject to being affected."

The next contention advanced by Mr. Lehman is that he owned no interest in the Clark County real estate, having conveyed the same to his wife, Ileen. Thus, according to his argument, there was no property to attach, and nothing against which a judgment *in rem* could operate. On the surface, this line of reasoning might appear to have some merit.

On the other hand, the plaintiff asserts that the conveyance from Lehman to his wife was without consideration and given in fraud of creditors. To implement this position, Mrs. Cadwallader moved for permission to file a creditor's bill in this proceeding, the purpose of which would be to determine whether the conveyance was valid, or whether it was void as to attaching creditors. This motion was sustained by the court, and a motion in the nature of a creditor's bill was filed.

To prove her right to bring a creditor's bill at this juncture, the plaintiff relies on *Parmenter v. Lomax*, 68 Kan. 61, 74 Pac. 634. We think her reliance is well placed, for the Parmenter case bears a marked similarity to the present case. In Parmenter, the plaintiff-creditor attached, as property of the defendant-debtor, real estate which the latter had transferred before the action was commenced. Publication service was then obtained on the defendant, who was a nonresident of and absent from this state. Judgment was later rendered in favor of the plaintiff and the land was ordered sold.

However, the plaintiff did not proceed with sale on execution but instead commenced a separate equitable action to subject the attached land to payment of the judgment. In upholding the plaintiff's right to maintain such an action, this court said:

". . . The judgment obtained on service by publication was valid in all respects so far as the property seized was concerned. It was conclusive on all parties and privies to it, and could not be collaterally attacked. (*National*

*Bank v. Peters,* 51 Kan. 62, 32 Pac. 637; *Garrett v. Struble,* 57 id. 508, 46 Pac. 943.)

"If the remedy invoked in this case was denied to the plaintiff below, he could get no relief against the alleged fraudulent conveyance made by his debtor so long as the latter and his grantees avoided personal service of process. The suit had for its purpose the removal of obstacles in the way of the collection of the judgment interposed by the judgment debtor. An equitable interest in land is subject to attachment in this state. (*Shanks v. Simon,* 57 Kan. 385, 46 Pac. 774, *Travis v. Supply Co.,* 42 id. 625, 22 Pac. 991.) It was to obtain the fruits of the seizure of this equitable interest that the present suit was instituted. We have no doubt of the right of the plaintiff in error to maintain the action. (*Gibbons v. Pemberton,* 101 Mich. 397, 45 Am. St. Rep. 417; *M. & T. Bank of Jersey City v. Dakin et al.,* 51 N. Y. 519.)" (p. 64.)

We believe the Parmenter case, which has not been overruled or modified, is conclusive as to plaintiff's right to bring an action or file a motion in the nature of a creditor's bill. If such a right were to be denied, a nonresident debtor of a conniving disposition might, by subterfuge, fashion a haven of safety within this state for his property. A creditor would indeed be impaled on the horns of a dilemma were he unable to attack a fraudulent conveyance until he had secured a judgment, yet unable to obtain a judgment until he had set aside the fraudulent conveyance. A devious situation of this kind could but suggest the ancient argument as to which comes first, the chicken or the egg, and would prove intolerable. We must make it clear, however, we do not indicate any present opinion as to the validity of Mr. Lehman's conveyance to his wife. That question remains for determination by the trial court.

Our attention has been directed to the provisions of K. S. A. 60-218 (b) as providing an exclusive method of procedure in situations such as this. So far as now pertinent the statute reads:

"Whenever a claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion, the two claims may be joined in a single action; but the court shall grant relief in that action only in accordance with the relative substantive rights of the parties. In particular, but not exclusively, a plaintiff may state a claim for money and a claim to have set aside a conveyance fraudulent as to him, without first having obtained a judgment establishing the claim for money . . ."

Although an attaching creditor might well find it desirable to follow this procedure where applicable, we do not read the statute as being mandatory in character. It is significant that the legislature employed the permissive verb "may," rather than the mandatory "shall." In our judgment the statute affords a procedure which may be used, but does not make such procedure exclusive.

The defendant finally argues there was no competent evidence upon which to base the judgment which was entered, and that the court abused its discretion in refusing to set the judgment aside. To support these contentions, Mr. Lehman alleges in his brief that he was not given credit for all child support payments which had been made, although no allegations to such effect were contained in his motion to set the judgment aside.

K. S. A. 60-255 (*a*) relates to the entry of judgment by default. In pertinent part the statute provides:

"Upon request and proper showing by the party entitled thereto, the judge shall render judgment against a party in default for the remedy to which the party is entitled. . . ."

It is our opinion that default judgment was properly entered by the court on July 27, 1967. Although the defendant says in his brief that the judgment was entered over his objection, this assertion can be no more than an afterthought on his part, for the record utterly fails to support the statement. The journal entry recites that the defendant appeared neither in person nor by counsel. Furthermore, although Lawrence Lehman was represented in court on July 27th by Robert R. Baker as counsel, Mr. Baker advised the court on oral argument that he did not represent the defendant at that hearing. The record is entirely void of any appearance by the defendant until August 10, 1967, two weeks after the default judgment had been entered.

The journal entry further reflects that at the hearing of July 27th the plaintiff presented "the default petition and authenticated judgment and other evidence," after which the court "being well and fully advised" found in favor of the plaintiff and entered judgment in her favor. No attempt was made to amend the journal entry, nor has it been shown to be erroneous in any respect. We discern no irregularity in the manner by which this judgment was entered.

Turning to the abuse of discretion alleged against the trial court, based on its refusal to set the default judgment aside, we first note the provisions of K. S. A. 1968 Supp. 60-255 (*b*):

"For good cause shown the court may set aside a judgment entered by default in accordance with section 60-260 (*b*)."

K. S. A. 60-260 (*b*), to which reference is made in the foregoing statute, reads in part:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the

following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . ."

These provisions were considered by us in the recent case of *Wilson v. Miller*, 198 Kan. 321, 424 P. 2d 271, where we said that our entire procedure for trial of civil litigation would be destroyed if a judicial summons or other legal process were allowed to be treated with indifferent neglect. The same might well be said if legal process could, with impunity, be willfully or intentionally ignored. Continuing its discourse, in the Wilson case, the court said:

"It is the general rule, and the rule is conceded by appellant, that the relief to be granted under these provisions rests in the sound discretion of the trial court.

"We concur in that policy of the law which favors the hearing of a litigant's claim on the merits. However, laudable as is the policy, courts are required to make a determination between such a goal and the necessity of achieving finality in litigation." (pp. 322, 323.)

In a somewhat earlier case, *Lackey v. Medora Township*, 194 Kan. 794, 401 P. 2d 911, where relief under K. S. A. 60-260 (*b*) (1) was under consideration, this court stated:

"Since the foregoing provision was lifted from rule 60 of the Federal Rules of Civil Procedure we may look to federal cases for its construction and application.

"Relief under the provision quoted is not a matter of right, but is addressed to the sound discretion of the trial court. See, e. g., *Fischer v. Dover Steamship Co.*, 218 F. 2d 682; *Smith v. Kincaid*, 249 F. 2d 243; and *Petition of Pui Lan Yee*, 20 F. R. D. 399. Discretion should ordinarily incline towards granting relief in order that judgments reflect the true merits of the case. (*Barber v. Turberville*, 218 F. 2d 34.) However, it is desirable that final judgments not be lightly disturbed and the motions and the grounds for that relief should be closely scrutinized." (p. 796.)

Under the circumstances disclosed by this record we are not inclined to charge the trial court with abuse of discretion. For many months the defendant chose to ignore the process of the trial court, although he now claims he did not know this lawsuit existed. This claim simply does not stand up under scrutiny. Even after Lehman was compelled to take note of the pendency of these proceedings because money due from sale of the farm was being held up, he continued to disregard the court's process, pending a futile attempt by his brother to intervene in the action as an interested party.

Although the defendant asserts that his motion to set aside the default judgment was predicated on 60-255 ($b$), we think it may not be amiss to suggest that any effort to have had it considered under K. S. A. 60-309, which governs the opening of a default judgment based on publication service, would have been equally unavailing. The record discloses neither that the defendant had filed a full answer nor that he was without actual notice of the proceedings, both of which conditions must precede the granting of relief under the foregoing statute.

No error being made to appear, the judgment is affirmed.