No. 51,136

Danny R. Porter, *Appellant*, v. Stormont-Vail Hospital, *Appellee*.

(621 P.2d 411)

Opinion filed December 6, 1980.

*Leonard W. McAnarney,* of Lyndon, argued the cause and was on the brief for appellant.

*Justice B. King,* of Fisher, Patterson, Sayler & Smith, of Topeka, argued the cause and *Edwin D. Smith,* of the same firm, and *Wayne T. Stratton* and *Patrick Salsbury,* of Goodell, Cogswell, Stratton, Edmonds, Palmer & Wright, of Topeka, were with him on the brief for appellee.

The opinion of the court was delivered by

Holmes, J.: Plaintiff-appellant, Danny R. Porter, appeals from an order of the district court granting summary judgment to the defendant-appellee, Stormont-Vail Hospital. This case grows out of an action originally filed by Stormont-Vail against Porter in the magistrate court of Shawnee County to collect a hospital bill for services rendered to Porter. Stormont-Vail recovered a default judgment against Porter for the sum of $478.18. The judgment remains unpaid. Post-judgment collection procedures were instituted in the magistrate court and on three occasions between April, 1974, and January, 1977, Porter was arrested on bench warrants issued by the judge of the magistrate court upon Porter's failure to appear in response to court orders directing him to appear. Porter was incarcerated briefly on the first two bench warrants and posted a bond at the time of his arrest on the third. He then filed this action in the district court seeking actual and punitive damages based upon allegations of malicious prosecution, false arrest, false imprisonment and abuse of process. Following discovery both parties filed motions for summary judgment and the motion of the defendant was sustained.

K.S.A. 60-256(c) provides in part:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

We do not deem it necessary to once again set forth the basic principles which apply when a motion for summary judgment is before the court. They were recently set forth at length in *Fredricks v. Foltz,* 225 Kan. 663, 666, 594 P.2d 665 (1979).

The learned trial judge filed an extensive memorandum decision and order as follows:

"MEMORANDUM OF DECISION AND ORDER

"The Motion for Summary Judgment of defendant was heard by the Court and taken under advisement. The matter comes on now for decision.

"The Court finds the facts, for the purposes of this motion, to be as follows:

"In the early part of 1973, plaintiff entered Stormont-Vail Hospital and received medical services with respect to a knee operation, and these services had the fair and reasonable value of $478.18.

"Plaintiff subsequently prosecuted a workmen's compensation claim with respect to the knee operation and recovered a sum of $2,600.00.

"Neither plaintiff nor the workmen's compensation insurance carrier ever paid the aforementioned amount of $478.18 owing to Stormont-Vail Hospital as a result of services rendered to plaintiff with respect to his knee operation.

"Upon plaintiff's failure to pay the amount of $478.18 upon demand, the defendant Stormont-Vail Hospital filed suit in the Magistrate Court of Shawnee County, Kansas, against plaintiff Porter seeking recovery of the amount of $478.18 with interest at the rate of eight percent (8%) per annum, and for costs.

"On the 30th day of March, 1974, Richard Tucker, Sheriff of Rice County, Kansas, received a Summons and copy of Petition from the Magistrate Court of Shawnee County, Kansas, involving the case of *Stormont-Vail Hospital v. Danny R. Porter,* Case No. 74-CV-486, for the purpose of serving Danny R. Porter, defendant in that action.

"On the 1st day of April, 1974, Sheriff Richard Tucker personally served Danny R. Porter with the Summons and copy of Petition in *Stormont-Vail Hospital v. Porter* at 9:00 a.m.

"On April 1, 1974, Sheriff Richard Tucker made return of Summons to the Magistrate Court of Shawnee County, Kansas, and caused the same to be mailed to such Court.

"By inadvertence, Sheriff Tucker failed to sign his name to the Sheriff's Return of Summons mentioned above, but nevertheless states that he personally served Danny R. Porter at the date and time mentioned.

"Pursuant to the Summons personally served upon plaintiff Porter on April 1, 1974, plaintiff Porter was ordered to appear in the Magistrate Court of Shawnee County, Kansas, at 11:00 o'clock a.m., April 24, 1974, and was informed that should he either fail to appear before the Court, personally or by counsel, at that time, or prior to that time file with the court a pleading in response to the Petition, judgment by default would be taken against him for the relief demanded in the Petition; plaintiff Porter failed to appear either personally or by counsel before the Court on April 24, 1974, and further failed to file any pleading in response to the

Petition, any objection to venue, or any request for additional time; as a consequence of plaintiff's failure to appear or timely plead, a default judgment was entered against him by the Court in accordance with K.S.A. 61-1721 for the amount requested in the Petition, said amount being $478.18, with interest at the rate of eight percent (8%) per annum from February 13, 1973, and for costs.

"On April 30, 1974, the attorney for defendant Stormont-Vail Hospital made application for examination of judgment debtor Porter to the Magistrate Court, and pursuant to such application, the Court entered an order for plaintiff Porter to personally appear before the Court at 11:00 o'clock a.m. on the 22nd day of May, 1974; the application, and the order issued pursuant thereto, were in accordance with Chapter 61, Kansas Statutes Annotated, and the rules, practices, and procedures of the Magistrate Court.

"Plaintiff Porter was personally served with the aforementioned order to appear, but failed to appear at the time indicated.

"As a result of plaintiff's failure to appear on May 22, 1974, as ordered, a citation in contempt was issued by the Court ordering plaintiff to appear before the Court on July 3, 1974, at 11:00 o'clock a.m. and show cause, if any, why he should not be punished for contempt of Court; this citation in contempt was personally served upon plaintiff, but plaintiff failed to appear before the Court at the time indicated.

"As a consequence of plaintiff Porter's failure to appear on July 3, 1974, a Bench Warrant was issued on July 10, 1974, ordering that plaintiff Porter be arrested and brought before the Court to answer to the charge of failure to appear as ordered; this Bench Warrant was issued in accordance with Chapter 61 of the Kansas Statutes Annotated, and the rules, practices and procedures of the Magistrate Court.

"Pursuant to the aforementioned Bench Warrant, plaintiff Porter was arrested on September 24, 1974, and brought before the Court on September 25, 1974, to answer to the charge of contempt for failure to appear as ordered; at that time the matter on contempt was held in abeyance by the Court, and plaintiff was ordered to appear October 9, 1974, at 11:00 o'clock a.m.

"Plaintiff Porter failed to appear as ordered on October 9, 1974, and as a consequence, a Bench Warrant was issued for plaintiff's arrest by the Magistrate Court of Shawnee County in accordance with Chapter 61, Kansas Statutes Annotated, and the rules, practices and procedures of the Court.

"Pursuant to the aforementioned Bench Warrant, plaintiff was again arrested on July 13, 1976, and brought before the Court on July 14, 1976; at that time, the matter of contempt of Court was held in abeyance, and plaintiff Porter was ordered to appear before the Court on August 11, 1976.

"Plaintiff Porter appeared before the Court on August 11, 1976, pursuant to the aforementioned order, and the matter of contempt of Court was held in abeyance; plaintiff was ordered to re-appear before the Court on September 8, 1976.

"Plaintiff Porter failed to appear as ordered on September 8, 1976, and as a consequence, a Bench Warrant was issued for plaintiff's arrest by the Magistrate Court of Shawnee County in accordance with Chapter 61, Kansas Statutes Annotated, and the rules, practices and procedures of the Court.

"Pursuant to the aforementioned Bench Warrant, plaintiff Porter was arrested in January of 1977; he was not, however, transported to Shawnee County at the time of this arrest, but rather was allowed to post a bond of $50.00 thereby assuring his

appearance before the Magistrate Court of Shawnee County; upon the posting of the bond, plaintiff was released from custody upon condition that he appear before the Magistrate Court of Shawnee County when so ordered.

"There have been no further proceedings in the case of *Stormont-Vail Hospital v. Danny R. Porter,* Case No. 74-CV-486, since plaintiff's arrest, and subsequent release from custody in January of 1977.

"Plaintiff has at no time filed an appeal from the judgment entered against him in the case of *Stormont-Vail Hospital v. Danny R. Porter,* Case No. 74-CV-486.

"Plaintiff claims that the judgment rendered against plaintiff is void for failure of the Sheriff of Rice County, Kansas to sign [the return of service]; that plaintiff has been maliciously prosecuted, abused with process and falsely arrested and imprisoned. Defendant maintains that it is entitled to judgment, as a matter of law, on the foregoing claims.

"The Court finds and concludes as follows:

"Plaintiff's claims appear to stem from his assertion that the Magistrate Court of Shawnee County lacked jurisdiction to enter a default judgment against him in the case of *Stormont-Vail Hospital v. Danny R. Porter,* No. 74-CV-486, and as a result, the judgment entered and all post judgment proceedings are void. This contention is based on the failure of Sheriff Richard Tucker, of Rice County, Kansas, to sign the Return on Service of Summons. The Return in question includes the notation that Danny R. Porter was served personally on April 1, 1974, along with the miles traveled by and fees of the serving officer. The only omission is the signature of the officer perfecting service. Sheriff Tucker's affidavit, on file herein, states unequivocally that he perfected personal service on Danny R. Porter at 9:00 A.M. April 1, 1974, and inadvertently failed to sign the Return. Attached to Sheriff Tucker's affidavit is a copy of his Day and Expense Book setting out in detail his handling of service of summons on Danny Porter.

"The issue, stated simply, is this:

"When it is an uncontroverted fact that personal service of summons took place, does the inadvertent failure, of the officer perfecting service, to sign the return render any judgment entered and post judgment proceedings, had thereon, void?

"The statutory section which governed proof of service at the time Sheriff Tucker served plaintiff Porter in the case of *Stormont-Vail Hospital v. Danny R. Porter,* was K.S.A. 61-1807 (Supp. 1974) which states in pertinent part:

'Proof of service shall be made as follows: (a) *Personal or resident service.* (1) Every officer to whom summons or other process shall be delivered for service within or without the state, shall make return thereof in writing stating the time, place and manner of service of such writ, and shall sign his name to such return. . .'

"Also important to the question of whether service in *Stormont-Vail Hospital v. Porter* was valid is K.S.A. 61-1704 [1974 Supp.], which states in pertinent part:

'In any method of serving process, substantial compliance therewith shall effect valid service of process if the court finds that, notwithstanding some irregularity or omission, the party served was made aware that an action or proceeding was pending in a specified court in which his person, status, or property were subject to be affected.'

"The Kansas Supreme Court considered a similar question in *Cadwallader v. Lehman* 202 Kan. 738 [451 P.2d 163 (1969)]. In that case it was objected that the

officer who served the summons on the defendant did not verify the return and thus there was no valid service. The Deputy Sheriff made out his return properly but the Clerk of the Court attached an acknowledgment instead of executing a verification. At page[s] 743[-44] the Court said:

'We do not regard this as fatal, however. The district court approved the service, as shown by the journal entry of July 27, 1967. In so doing, the court was authorized, by the statute itself, to consider any competent proof that service had properly been made.

'In our opinion it was proper for the trial court, in determining whether the defendant was served with out-of-state summons on October 3, 1966, to take into account the return of service which, although only acknowledged, at least suggests personal service on Lehman, together with the letter of October 12, 1966, from the attorneys consulted by Lehman about the lawsuit. We conclude the court was justified in finding the defendant properly served with out-of-state process.'

"The rule is succinctly stated in Syllabus No. 7 to *Cadwallader v. Lehman,* supra:

'Under the provisions of K.S.A. 60-204 substantial compliance with a method of serving process shall effect valid service thereof where the court finds that, notwithstanding some irregularity or omission, the party served was made aware that legal proceedings were pending in a specified court in which his person, status or property might be affected.'

"In the instant case the sheriff made a full and complete return, setting out the fact that plaintiff was personally served at a specified time and date omitting only his signature. In addition to the return is Sheriff Tucker's affidavit to the effect that he personally served defendant Porter, and inadvertently omitted his signature, considered with the Sheriff's Day and Expense Log make it abundantly clear that defendant Porter 'was made aware that legal proceedings were pending in a specified Court in which his person, status or property might be affected' and this Court so finds.

"Plaintiff's next claim is for malicious prosecution. The elements of a malicious prosecution action are set out at PIK 2nd 14.30 as follows:

'To maintain an action for malicious prosecution the plaintiff must prove that the defendant instituted the proceeding of which complaint is made, that the defendant in so doing acted without probable cause and with malice, *and that the proceeding terminated in favor of the plaintiff.*' (emphasis supplied)

"See *Silva v. Lewis* 210 Kan. 348 [502 P.2d 831 (1972)] as approving PIK 2nd 14.30.

"The case on which this action is based, *Stormont-Vail Hospital v. Danny R. Porter,* terminated on April 24, 1974 in a default judgment in favor of Stormont-Vail Hospital and against Danny R. Porter. The unfavorable result, as to plaintiff, was not appealed and is now *res judicata.* The element of favorable termination, of the proceeding, is therefore lacking in plaintiff's claim.

"Plaintiff also asserts a claim for false arrest and false imprisonment. The statute of limitation applicable to that claim is found at K.S.A. 60-514. That statute states in pertinent part:

'Actions limited to one year. The following actions shall be brought within one (1) year . . . (2) An action for assault, battery, malicious prosecution, or false imprisonment. . . .'

The instant action was filed January 17, 1977. Any claim of plaintiff for false arrest or false imprisonment arising from an incident occurring at a time prior to January 17, 1976 is barred by the provision of K.S.A. 60-514.

"Defendant alleges that the judgment entered against plaintiff Porter in *Stormont-Vail Hospital v. Porter,* and the bench warrants issued by the Magistrate Court in enforcing that judgment establish a legal excuse for the arrest and imprisonment of plaintiff.

"The general rule accepted in Kansas, is stated in 32 Am. Jur. 2d, *False Imprisonment,* § 66, at page[s] 127[-28] as follows:

'An arrest . . . by virtue of process regular and legal in form, duly issued by a court, magistrate, or body having authority to issue it, and executed in a lawful manner, does not constitute false arrest or imprisonment. Valid process is a complete justification for the acts done under it and in compliance with it. It protects the person who [sued] it out, as well as the officer who executed it, in the case of a warrant of arrest. . . .'

"The arrests, and imprisonments resulting therefrom, of which plaintiff complains were made pursuant to bench warrants issued out of the Shawnee County Magistrate Court. PIK [Civ.] and 14.21 provides in relevant part as follows:

'A legal excuse for the restraint of the personal freedom of an individual is a defense to an action for (false imprisonment) (false arrest).

A legal excuse exists:

1. When an officer arrests with a valid warrant.'

"All arrests of plaintiff, and imprisonments arising therefrom, were made pursuant to valid warrants issued by a magistrate and therefore do not constitute false arrest or imprisonment.

"Defendant next claims it is entitled to judgment on plaintiff's claim for abuse of process.

"The elements of abuse of process are defined as follows:

'It is generally recognized that the elements essential to sustain the action are: (1) that the defendant made an illegal, improper, perverted use of the process, [a use neither warranted nor authorized by the process], and (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of process, and (3) that damage resulted to the plaintiff from the irregularity. While the existence of an ulterior motive may, perhaps, be inferred from the fact that the process has been misused or misapplied, the reverse is not true, for if the act of the prosecutor is in itself regular, the motive, ulterior or otherwise, is immaterial.' 1 *Am. Jur.* 2d 252 [-53], *Abuse of Process,* § 4.

"The Kansas Supreme Court has considered these elements as follows:

'. . . [T]wo elements are necessary to an action for malicious abuse of process, one the existence of an ulterior purpose, and second, an act in the use of such process not proper in the regular prosecution of the proceeding. . . .' *Welch v. Shepherd,* 169 Kan. 363, 366, 219 P.2d 444.

Plaintiff's specific claims as to abuse of process are contained in paragraph six of his petition and are stated as follows:

'That the conduct of the defendant herein resulted in an abuse of process in that the procedures utilized were for harassment purposes and in particular to

cause great inconvenience to the plaintiff in that he was residing several hundred miles from Topeka, Kansas, when required to report in connection with collection procedures. That after initiating said procedures there was not due process and that there was no hearing ever conducted in the Court pertaining to the issues tendered by the process that was issued by the Court upon request of the defendant herein and that the same was an abuse of process in all respects.'

"The post judgment activities of the defendant were conducted in accordance with the provisions of Chapter 61 of the Kansas Statutes Annotated and the rules, practices and procedures of the Shawnee County Magistrate Court. The post judgment remedies contained in Chapter 61, and more specifically K.S.A. 61-2204, 'provide a simple and effective method by which a person who has recovered judgment in a limited action may discover the assets of a recalcitrant judgment debtor and thus find property or funds which may be levied against in order to satisfy the judgment.' *Threadgill v. Beard,* 225 Kan. 296, 302 [590 P.2d 1021 (1979)]. The judgment rendered by the Magistrate Court in *Stormont-Vail v. Porter* remains unsatisfied to this date. Defendant's actions do not constitute 'an act in the use of such process not proper in the regular prosecution of the proceeding. . .' *Welch v. Shepherd,* supra, and therefore that element is lacking in plaintiff's claim.

"Defendant's Motion for Summary Judgment also addresses a negligence theory. This apparently stems from plaintiff's listing that theory in a pretrial questionnaire dated November 15, 1977. However, plaintiff has never amended his pleadings to encompass such a theory and the Court has not considered it in making this ruling.

"The issues in this case have been made more complex and the decision of the Court made more difficult by the failure of the plaintiff to comply with the dictates of SCR 141 and to cite legal authority in support of his position. That failure has also resulted in the expenditure of unnecessary hours and a regrettable delay in the Court rendering its decision.

"The Motion of the defendant for Summary Judgment is sustained for the reasons set forth above. The foregoing Memorandum of Decision shall serve as the Order of the Court. Costs are taxes to the plaintiff.
Dated April 26, 1979."

Regardless of what might be said about the procedures followed by the magistrate court in the original collection action, the fact remains that such procedures did comply with the appropriate statutes and the orders and bench warrants were legally issued by the magistrate judge and not by Stormont-Vail. On the record before us, no other conclusion can be reached.

We have carefully considered all points raised by the appellant together with the record on appeal and conclude that the trial court was correct in its final determination of this case.

Appellee seeks attorney fees and costs under Rule 7.07(b) on the grounds that the appeal herein was frivolous and taken only for the purpose of harassment and delay. While much of what

defendant says in its brief about the merits of this appeal is true, and while the comments of the trial judge in the penultimate paragraph of his memorandum opinion would also apply to the brief of the plaintiff, we cannot say the appeal was totally without merit and therefore defendant's request for attorney fees and costs is denied.

The judgment is affirmed.

SCHROEDER, C.J., dissenting: The facts disclosed by the record in this case, as viewed on a motion for summary judgment, portray a shocking experience for one subjected to Kansas law. To say the judgment debtor is a "dead beat" and brush the case aside is not the proper disposition of this case.

My dissent is confined to the specific claim of Danny R. Porter (plaintiff-appellant) as *to abuse of process* alleged in his petition.

The statute upon which Stormont-Vail Hospital, through its counsel, relied in the magistrate court is K.S.A. 1973 Supp. 61-2204. The 1979 version of the statute has not changed in any material respects from the 1973 version which governed the proceedings below.

In capsule form my dissent is based upon a *failure to comply with 61-2204 in three particulars:*

1. After initiating the proceeding in aid of execution, the judgment creditor failed to make application to the magistrate judge for a finding "that it will not cause undue hardship on the judgment debtor . . . residing in another county in this state to appear before said court for such examination." The magistrate judge was required to order Porter's appearance only after making a finding of no undue hardship.

2. After the magistrate judge issued his order for Porter to appear and answer concerning his property *at a hearing "before such court,"* and Porter's numerous appearances before the court, there was *never an examination at a hearing before the magistrate judge* to ascertain what property, if any, Porter had to apply on the judgment debt.

3. After the issuance by the magistrate judge of various contempt citations and Porter's subsequent appearance, either upon arrest or voluntary appearance, there was *never a hearing before the magistrate judge on any contempt citation.* All contempt proceedings were held *in abeyance,* after Porter's

appearance in court, with the admonition that he appear again at a future date certain.

When this action was finally filed against Stormont-Vail Hospital, all proceedings in aid of execution and contempt were dismissed. The record on the magistrate judge's docket sheet is incomplete and leaves much to be desired.

Setting forth my reasons in full in the present posture of the case will establish on the part of the judgment creditor: (1) an ulterior purpose; (2) improper acts in the use of the foregoing process, and (3) damage resulting to Porter.

The trial court in ruling on Porter's claim as to abuse of process simply stated: "The post judgment activities of the defendant were conducted in accordance with the provisions of Chapter 61 of the Kansas Statutes Annotated and the rules, practices and procedures of the Shawnee County Magistrate Court." If this is true, the legislature is admonished to take a good look at K.S.A. 1979 Supp. 61-2204. The rules, practices and procedures of the Shawnee County Magistrate Court, of course, cannot go beyond statutory authorization.

The allegations of Porter setting forth his specific claims as to abuse of process are contained in paragraph six of his petition, which is quoted in the trial court's "Memorandum of Decision and Order" and incorporated in Supreme Court's opinion.

The established law in an action for malicious abuse of process is accurately set forth in the trial court's "Memorandum of Decision and Order," but it was not applied to the facts in this case. See *Welch v. Shepherd,* 169 Kan. 363, 366, 219 P.2d 444 (1950).

The law as it has developed through the years on proceedings in aid of execution and contempt is found in *In re Burrows,* 33 Kan. 675, 7 Pac. 148 (1885); *Tatlow v. Bacon,* 101 Kan. 26, 165 Pac. 835 (1917); and *Threadgill v. Beard,* 225 Kan. 296, 590 P.2d 1021 (1979). Proceedings in the magistrate court concerning Porter, presently under scrutiny, pervert the law in these cases.

The record discloses that in early 1973 Danny R. Porter entered Stormont-Vail Hospital in Topeka. He received medical services related to a knee operation. Porter subsequently prosecuted a worker's compensation claim, with the aid of present counsel, Leonard McAnarney. The claim was settled for $2,600. Porter thought the settlement with the worker's compensation insurance carrier included payment by the insurance company of all medi-

cal bills. The insurance company paid one of the hospital bills, but a bill for $478.18 remained unpaid.

Stormont-Vail made demand upon Porter to pay the bill, then filed suit against Porter in the magistrate court of Shawnee County, in March 1974. The hospital sought payment of the bill plus interest and costs. Porter contends he never received personal notice of the law suit. At all times relevant, Porter resided in Geneseo, Rice County, Kansas, approximately 200 miles from Topeka. Richard Tucker was then sheriff of Rice County, Kansas. In an affidavit, Sheriff Tucker states that he personally served Porter with summons and a copy of the petition in the Shawnee County civil action. Sheriff Tucker failed to sign his name to the sheriff's return of summons, but nevertheless claims he effected personal service on Porter. Assuming valid service of process, Porter did not file an answer, and a default judgment was entered against Porter on April 24, 1974.

On April 30, 1974, the attorney for Stormont-Vail applied to the magistrate court for a *proceeding in aid of execution, in order to determine what assets, if any, Porter had available to be applied toward satisfaction of the judgment.* The record does not contain the original, or a copy, of the application for examination of the judgment debtor. However, an affidavit of the magistrate judge states that forms No. 12 and No. 13 of the appendix to Chapter 61, authorized by K.S.A. 61-2605, were deemed sufficient to implement the rights of judgment creditors under K.S.A. 61-2204.

These forms read:

"Form No. 12: APPLICATION FOR HEARING IN
AID OF EXECUTION
(Caption of Case)
APPLICATION FOR EXAMINATION OF
JUDGMENT DEBTOR

"_____, attorney for _____, plaintiff (or defendant), makes application to the court for an order requiring _____, defendant (or plaintiff) and judgment debtor herein, *to appear before this court* at a time and place specified *to be examined and answer concerning his* (her or their) *property.*

"In support of this application, the undersigned alleges and advises the court that:

"(1) Judgment was entered on _____, 19____, in favor of said plaintiff (or defendant) against said defendant (or plaintiff) for the sum of $_____ and costs.

". . . .
"°(3) The judgment creditor is without sufficient knowledge of the judgment debtor's assets to cause a levy of execution herein.

"°(4) The judgment debtor resides outside this county at _____ _____, but said judgment debtor has submitted to the jurisdiction and venue of this court and that requiring him or her to appear before this court for such examination will not cause undue hardship to said judgment debtor.
(Signature)

Dated_____
"°(Those portions not relevant to this application should be omitted or deleted.)
(Emphasis added.)

"Form No. 13: ORDER FOR HEARING IN AID
OF EXECUTION
(Caption of Case)
ORDER TO APPEAR FOR HEARING IN AID
OF EXECUTION

"To_____, judgment debtor:

"You are hereby *ordered to personally appear before this court* at _____ o'clock ____M., on the _____ day of _____, 19____, in the court-room of this court in the courthouse of _____ County, Kansas, *to be examined and answer concerning your property, assets and income.*

"This order is directed to you for the reason that judgment was entered against you in the above entitled action and to this date remains unpaid and unsatisfied.

"Failure to appear at the above time and place may cause you to be cited and punished for contempt of this court.
(Signature), Judge

Dated_____

"(There should be added to this order a return showing the manner in which the order was served similar to the return on a summons.)"

There is nothing in the record to indicate the magistrate judge made the statutory finding that to require the judgment debtor who resides in another county to appear before the court in Shawnee County would not cause undue hardship to the judgment debtor. In his affidavit which is part of the record herein the magistrate judge states:

"With respect to implementing the rights of the judgment creditors under K.S.A. 61-2204, the following policies were followed by the Magistrate Court:

". . . .
"B. The application itself, if in proper form, was regarded as proper cause for issuance of an order for a debtor to appear. Such order issued and the judgment debtor was expected to appear on the date shown in the order unless other evidence presented and a hearing held prior to the appearance date showing undue hardship with respect to a debtor residing in another county, and unless upon such evidence, the court in weighing all the circumstances found that such hardship was in fact undue."

The substance of the foregoing procedure described by the magistrate judge shifts the burden of proof to the judgment debtor, who resides outside Shawnee County, to appear prior to the appearance date and show undue hardship. This procedure ignores the statute (61-2204). A proper interpretation of the statute places the burden of proof upon the judgment creditor. The magistrate judge is required to make a finding of no undue hardship *before* the order to appear is issued.

The court issued an order for Porter to appear before the court on May 22, 1974. The record does not contain the original, or a copy, of the order to appear for a hearing in aid of execution. As heretofore noted, in the affidavit the magistrate judge states that form No. 13 was used. The record shows Porter was personally served with the order to appear.

Porter did not appear for the hearing on May 22, 1974. As a result of Porter's failure to appear on May 22, *a citation was issued by the court ordering Porter to appear before the court on* July 3, 1974, at 11 a.m., *to show cause, if any, why he should not be punished for contempt of court.* The citation was personally served on Porter, who failed to appear on July 3, 1974. A bench warrant was issued on July 10, 1974, ordering that Porter be arrested and brought before the court and answer the charge of failure to appear.

Porter was arrested on the bench warrant in Rice County. He was transported *in handcuffs* to Shawnee County where he was *jailed.* Porter states in his deposition that he was held in jail for three days. The record is not otherwise clear on the length of time Porter was held in jail. Porter was taken before the magistrate court on September 25, 1974, to answer the charge of failure to appear. *No hearing was conducted to determine whether Porter was in contempt.* Counsel for Stormont-Vail was present, and Porter was interrogated by such counsel about his assets. In his deposition, Porter states that he informed the Stormont-Vail counsel that the hospital bill was a mistake and should have been paid by the worker's compensation insurance carrier. *The matter of contempt was held in abeyance, and Porter was ordered to appear again in two weeks, on October 9, 1974.* The record does not disclose whether the order to appear was for the purpose of conducting a hearing in aid of execution, a hearing on the contempt charge, or both.

Porter failed to appear on October 9, 1974. A second bench warrant was issued by the magistrate court. The bench warrant was outstanding for almost twenty months. On July 13, 1976, Porter was arrested in Rice County on the bench warrant. He was again transported to Shawnee County by sheriff's deputies and spent *one night in jail.*

On July 14, 1976, Porter was taken before the magistrate court. *No hearing was conducted on the contempt charge. The matter of contempt was held in abeyance, and Porter was ordered to appear again in one month, on August 11, 1976.* In his deposition Porter states he was again examined about his assets by the Stormont-Vail counsel on July 14, 1976. Porter traveled the approximate 200 miles from Geneseo, Kansas, and appeared on August 11, 1976. *No hearing was conducted on the contempt charges, and the matter of contempt was again held in abeyance.* Stormont-Vail counsel again examined Porter in regard to his assets subject to execution. Porter was ordered to appear again in one month on September 8, 1976.

Porter failed to appear on September 8, 1976, and a bench warrant was issued by the magistrate court. *Four months later, in January 1977, Porter was arrested for the third time in Rice County.* Porter was permitted to post a $50 bond, and was released from custody upon the condition he appear before the Magistrate Court of Shawnee County, when ordered. There have been no further proceedings against Porter on the judgment since January 1977. The record is not clear, but apparently *on March 3, 1977, the bench warrant and citation in contempt were recalled, and the order in aid of execution dismissed.*

Porter, prior to the dismissal, filed suit against Stormont-Vail Hospital *in January 1977.* The civil suit alleged the default judgment against Porter was void and that all actions to collect on that judgment were invalid. Porter alleged Stormont-Vail was guilty of false arrest and imprisonment, malicious prosecution of a civil action, and abuse of process.

In my opinion the trial court properly ruled on all matters in the motion for summary judgment except the allegations charging abuse of process.

The essential elements of an action for malicious abuse of process are (1) the existence of an ulterior purpose, and (2) an act in the use of such process not proper in the regular prosecution of

the proceeding which results in damage to the plaintiff. *Welch v. Shepherd,* 169 Kan. at 366.

The record indicates Stormont-Vail Hospital, through counsel, properly sought magistrate court assistance through proceedings in aid of execution. The request was reasonable and legitimate— to discover what assets, if any, Stormont-Vail Hospital could levy against, or require Porter to apply, to satisfy the default judgment.

But the magistrate failed to make the required *finding* that it would not be a hardship on Porter, residing in Rice County, to appear on a date certain for examination *at a hearing before the magistrate judge,* to ascertain what assets Porter had, if any, to apply on the debt. The magistrate judge thereafter *completely defaulted* in honoring the orders he had issued concerning the proceedings in aid of execution and in contempt. *No hearing was ever conducted before the magistrate judge pursuant to any of his orders.*

The resultant conduct by Stormont-Vail Hospital, through counsel, was a continual harassment and badgering of the judgment debtor, Porter. The harassment continued until Porter filed this action, at which time all proceedings were dismissed.

It cannot be said this was done under the cloak of the court because the court had completely abdicated its statutory duty to function as a court.

Under these circumstances Stormont-Vail, through counsel, in the conduct of proceedings in the magistrate court, ostensibly pursuant to its application for proceedings in aid of execution, stands charged with an ulterior purpose by its incessant harassment of the judgment debtor. The tactics of Stormont-Vail, through counsel, constitute acts in the use of such process which are not proper in the regular statutory prosecution of the proceedings.

The question may be asked whether Stormont-Vail Hospital is the proper defendant in the action.

The record herein must be reviewed under the rules governing a motion for summary judgment as stated in *Lawrence v. Deemy,* 204 Kan. 299, 301, 461 P.2d 770 (1969):

"Generally before a summary may be granted, the record before the court must show conclusively that there remains no genuine issue as to a material fact, and that the moving party is entitled to judgment as a matter of law. A mere surmise or belief on the part of the trial court, no matter how reasonable, that a party cannot prevail upon a trial will not warrant a summary judgment if there remains a

dispute as to a material fact which is not clearly shown to be sham, frivolous, or so unsubstantial that it would be futile to try the case. (*Knowles v. Klase,* 204 Kan. 156, 460 P.2d 444; *Green v. Kaesler-Allen Lumber Co.,* 197 Kan. 788, 420 P.2d 1019.) The manifest purpose of a summary judgment is to obviate delay where there is no real issue of fact. A court should never attempt to determine the factual issues on a motion for summary judgment, but should search the record for the purpose of determining whether factual issues do exist. If there is a reasonable doubt as to their existence, a motion for summary judgment will not lie. (*Secrist v. Turley,* 196 Kan. 572, 412 P.2d 976.) A court, in making its determination, must give to the party against whom summary judgment is sought the benefit of all inferences that may be drawn from the facts under consideration. (*Shehi v. Southwest Rentals, Inc.,* 199 Kan. 265, 428 P.2d 838; *Jarnagin v. Ditus,* 198 Kan. 413, 424 P.2d 265; *Brick v. City of Wichita,* 195 Kan. 206, 403 P.2d 964.)"

Giving Porter the benefit of all inferences that may be drawn from the facts under consideration, Stormont-Vail Hospital is held to be fully aware of, and consented to, the actions of its counsel in prosecuting its application for proceedings in aid of execution.

The Kansas Supreme Court has held where a principal perpetrates a wrong, acting through his agent, the principal is liable for the damage. Thus in *Stalker v. Drake,* 91 Kan. 142, 136 Pac. 912 (1913), the court held:

"The petition herein interpreted and held to state a cause of action for willful and malicious oppression by the defendant, acting through his agents, in seeking to enforce usurious and unlawful claims against plaintiff, and should not be regarded as one asserting a liability on the ground of the conspiracy of the defendant with his agents as tort-feasors and coconspirators." (Syl. ¶ 1.)

"Where a party makes an unlawful demand against another and maliciously and oppressively uses the machinery of the courts and the process of the law as well as other measures in an endeavor to enforce the payment of such demand the injured party is entitled to recover the loss and damage resulting from such wrongdoing." (Syl. ¶ 2.)

"Exemplary damages are not allowable because of any special merit in plaintiff's case, but are imposed by way of punishing the defendant for an invasion of the plaintiff's rights in cases characterized by malice, fraud or a willful and wanton disregard of the rights of others, and it is held that the elements justifying the allowance of such damages are present in this case." (Syl. ¶ 3.)

In the opinion the court stated:

"The argument that a cause of action is not stated in the petition can hardly be seriously made. It certainly states good ground for recovery for both actual and punitive damages, and it would be a reproach upon the law if it did not afford a remedy for the willful and malicious acts of oppression and coercion recited in the petition." 91 Kan. at 147.

It is generally held that a person who previously consulted his

attorney, or afterward sanctioned, or at least approved, the act committed by his attorney which constituted an abuse of process, is liable. 1 Am. Jur. 2d, Abuse of Process §§ 17, 19.

For an analogous case involving action by an in-house attorney that resulted in liability to the plaintiffs for both actual and punitive damages see *Ford v. Guarantee Abstract & Title Co.*, 220 Kan. 244, 553 P.2d 254 (1976). See also *Guarantee Abstract & Title Co. v. Interstate Fire & Cas. Co.*, 228 Kan. 532, 618 P.2d 1195 (1980).

A lucid discussion of an attorney's involvement in an action for abuse of process is found in *Fite v. Lee*, 11 Wash. App. 21, 28-29, 521 P.2d 964 (1974), where the court said:

"Were we to agree that dismissal with prejudice of the client who is without knowledge that her attorney has issued the process on her behalf, is res judicata of the claim against the attorney, we would be required to make two assumptions of doubtful validity: (1) that the attorney-client relationship is an ordinary agency relationship, and (2) that when an attorney does an unlawful act on behalf of his client without the client's knowledge or consent he has implied authority from the client to do so. We cannot accept such assumptions.

"An attorney in discharging his professional duties acts in a dual capacity. In a limited or restricted sense he is an agent of his client. But he has powers, including those to issue judicial process, far superior to those of an ordinary agent.

"As an officer of the court, his duties are both private and public. Where the duties to his client to afford zealous representation conflict with his duties as an officer of the court to further the administration of justice, the private duty must yield to the public duty. He therefore occupies what might be termed a 'quasi-judicial office.' *Langen v. Borkowski,* 188 Wis. 277, 301, 206 N.W. 181, 190 (1925), 43 A.L.R. 622 (1926); *Hoppe v. Klapperich,* 224 Minn. 224, 28 N.W.2d 780 (1947); CPE 32.

"By its very nature, an abuse of legal process by an attorney as defined above violates an attorney's oath, his canons of ethics, and his duty to the public as an officer of the court. . . .

"Accordingly, *the scope of the attorney's implied* authority as an agent should not, as a matter of law, extend to acts which constitute an abuse of legal process. . . .

. . . . .

"It follows then that if an attorney has, without the knowledge or consent of his client, abused process to the damage of another, the attorney acts outside the scope of his agency and the client should not be derivatively liable. See *Barton v. Tombari,* 120 Wash. 331, 207 P.2d 239 (1922); See Restatement (Second) of Agency § 228 (2) (1958); See Restatement (Second) of Agency § 246, comment b (1958). Consequently dismissal of the action against the client should not be res judicata of the injured party's claim against the attorneys." (Emphasis added.)

In the present posture of this case the court is not concerned with the implied authority of the attorney to act as an agent for his client.

Counsel for Stormont-Vail Hospital, who was admitted to the Kansas Bar and is an officer of the court, had a duty to uphold his oath to support the Constitution of Kansas and uphold the statute under which Stormont-Vail proceeded to invoke the jurisdiction of the magistrate court. It was counsel's obligation to see that the magistrate judge did not abdicate responsibility under the orders issued by the court.

The sum and substance of the magistrate judge's failure to honor his orders resulted in a complete lack of due process. Hearings conducted pursuant to the orders entered by the magistrate judge would have given Porter the opportunity to show his indigency and the undue hardship imposed by the orders to appear monthly. At a proper hearing Porter could show that he had no automobile of his own, was unemployed much of the time, and burdened with automobile problems when he borrowed a friend's automobile in an attempt to travel to Topeka from Geneseo. Never was Porter found to be in contempt.

Although the remedies of judgment creditors deserve judicial support, the rights of judgment debtors under Kansas law cannot be ignored.

It is respectfully submitted the trial court erred in sustaining the appellee's motion for summary judgment on the appellant's allegations in his petition on abuse of process.

HERD, J., joins the foregoing dissent.